THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THOMAS WEST, Defendant-Appellant.

Second District   No. 2—90—0121

Opinion filed August 19, 1992.—Rehearing denied October 22, 1992.

580

DUNN, J., dissenting.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Marilyn Martin, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Kevin B. McCarthy, of Springfield (William L. Browers and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUDGE WOODWARD delivered the opinion of the court:

Following a jury trial, the defendant, Thomas West, was convicted of two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i)) and was sentenced to serve a term of three years' imprisonment in the Department of Corrections. Defendant appeals, raising the following issues: (1) whether the admission of the victim's out-of-court statement was reversible error; (2) whether the defendant was proved guilty beyond a reasonable doubt; (3) whether the defendant was denied a fair trial due to certain evidentiary rulings by the trial court; (4) whether defendant was denied a fair trial by the prosecutor's closing argument; and (5) whether defendant was denied the effective assistance of counsel.

### MOTION TO SUPPRESS

Prior to trial, defendant filed a motion to suppress a written statement he gave to Officer Ralph Henriquez of the Waukegan police department. At the hearing held on the motion, Officer Henriquez tes-

tified that on August 30, 1989, at approximately 10:30 p.m., he interviewed the defendant at the Waukegan police department concerning allegations of certain actions between himself and his seven-year-old niece, S.W. After the defendant had been given *Miranda* warnings, he told Henriquez he would talk to him. Defendant then gave a statement, which Henriquez typed up and defendant signed. According to the statement, defendant admitted putting his arms around S.W. from behind and touching her private area; that he showed S.W. a poster with some women on it; and that he had pulled down his pants exposing himself to her and signaled to her to come over to him but that S.W. had then left the room. Henriquez denied ordering the defendant to sign the statement or promising him anything in return for his signature on the statement. Henriquez further testified that before signing the statement defendant told him that the statement was true and accurate.

On cross-examination, Henriquez testified that defendant was not in custody during the interview. He denied telling defendant that if he signed the statement Henriquez would help him get out of jail the next morning. Henriquez denied that defendant told him he had never touched S.W.

Defendant testified that he was locked in a cell at the Waukegan police department for two to three hours prior to his interview with Officer Henriquez. After Henriquez advised him of his rights, defendant agreed to talk to him. In response to Henriquez' questions, defendant told him that he never touched S.W. According to defendant, Henriquez gave him a piece of paper to sign which defendant read. When he got to the part of the statement which said that he had touched S.W., defendant told Henriquez that the statement was not true. Henriquez then told him that if he signed the statement it would go easier on him in court and that he would probably be released the next morning. Defendant also testified that Henriquez told him that he had to sign the statement.

On cross-examination, defendant denied that Henriquez had threatened him but reiterated that Henriquez had told him that he had to sign the statement and that he would go easy on him in court.

The trial court found Officer Henriquez' testimony to be the more credible and denied the motion to suppress.

### THE TRIAL

Outside the presence of the jury, a hearing was held to establish the competency of seven-year-old S.W. Under questioning by the State, S.W. demonstrated that she could spell her name, knew where

she attended school, what grade she was in, what her teacher's name was and what subjects she studied. She could also recall past events and knew the difference between the truth and a lie. The trial court found that she was competent to testify.

## FOR THE STATE

David W., S.W.'s father, testified that on the afternoon of August 30, 1989, he received a telephone call at work from his son, David, Jr. Over the objection of the defendant, but with a limiting instruction, David W. was permitted to testify that David, Jr., told him that defendant had "messed" with S.W. and had tried to fondle her in some way. The witness told David, Jr., to go with S.W. to his fiancee's house, and he would meet them there. After talking to S.W., David W. returned to his house, obtained a knife and would have gone after defendant. However, he was stopped by his mother and sisters, and defendant ran out the back door. The police were called. S.W. identified a picture of a semi-nude woman that the police showed her.

On cross-examination, David W. testified that S.W. not only told him that defendant had exposed himself to her, but he had rubbed up against her behind. He further testified that he did not tell David Asma, the investigator from the public defender's office, that defendant had rubbed up against S.W.

S.W. testified that she was in the basement of her home helping the defendant with his laundry. Defendant showed her a picture of a naked woman. Defendant then touched her behind. S.W. demonstrated this act by putting the pubic area of an adult male doll against the buttocks area of a small female doll. S.W. stated that defendant did not touch her anywhere else. According to S.W., defendant then went upstairs but returned to the basement and went inside a curtained area that he used as a bedroom. He called to S.W. to come into his bedroom, but she only went as far as the curtains. She saw defendant with his pants down exposing his "privates" to her. Defendant signaled her with his finger to come to him, but S.W. ran upstairs.

On cross-examination, S.W. testified that the prosecutors had told her what places on the dolls defendant had touched her. She did not know exactly where defendant was when he was behind her. She did not remember telling her Aunt Pat that the defendant had not touched her. She did remember telling her Aunt Bianca that defendant had just bumped her. She did not remember talking to David Asma.

On redirect examination, S.W. testified that the prosecutors had not told her what happened but that she had told them what had happened.

Out of the presence of the jury, a hearing was conducted to determine if S.W.'s out-of-court statement to Officer Henriquez was admissible pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10).

Henriquez testified that on August 30, 1989, at approximately 10 p.m., he questioned S.W. in the advocacy room of the Waukegan police department. S.W.'s father sat just outside of the room, and the door to the room was open. Henriquez asked S.W. to tell him what the defendant had done to her. She told him that defendant bumped his private part against her private part in back and demonstrated this with the use of male and female dolls. S.W. also told him that defendant put his hands around her placing his hands on her tummy. Defendant then lifted his hand and placed it on her private part. She identified her private part as the groin area on the female doll. S.W. then told Henriquez that defendant then gave her a book with naked ladies in it. She gave the book back to the defendant, who then went into his room. S.W. heard defendant call to her, at which time she saw defendant with his pants down and his private part out, motioning to her with his finger. S.W. stated that she walked to the curtain, and defendant motioned to her again with his finger. She told the defendant, "No way," and tried to run upstairs. According to S.W., although defendant tried to grab her by the pants leg and pull her pants down, he was not able to, and she ran upstairs. S.W. also told him that defendant had never done anything like this to her before.

On cross-examination, Officer Henriquez testified that he questioned S.W. almost immediately after she arrived at the police department. The interview took place at 8 p.m. Henriquez explained that, as he held the dolls, he asked S.W. to point out the areas that defendant had touched her.

The trial court concluded that S.W.'s statement fulfilled the requirements of section 115—10 as far as time, content and circumstances surrounding it and allowed it into evidence. Prior to Henriquez' testimony before the jury, the trial court instructed the jury as follows:

> "You have before you evidence that [S.W.] made statements concerning the offenses charged in this case. It is for you to determine whether the statements were made and if so, what weight should be given to the statements. In making that determination, you should consider the age and maturity of

[S.W.], the nature of the statements, and the circumstances under which they were made."

Officer Henriquez then testified in accordance with his prior testimony given outside of the presence of the jury and with his testimony at the hearing on defendant's motion to suppress.

On cross-examination, Officer Henriquez testified that at least one other police officer had spoken with S.W. prior to his interview with her. At the time he interviewed him, the defendant did not have an attorney with him. Henriquez did not tape-record or videotape his interview with the defendant. Defendant did not write out the statement; Henriquez typed it himself. Henriquez agreed that obtaining an inculpatory statement from a suspect made for a better case.

FOR THE DEFENSE

Patricia Hagler, defendant's sister, testified that on August 30, 1989, she went to pick up S.W. at the home of Jasmine Wadsworth, her brother, David W.'s, girlfriend. In the presence of Jasmine and S.W.'s two brothers, Patricia asked S.W. if the defendant had touched her, and S.W. told her no. In a second conversation, S.W. denied that defendant had touched her. S.W. never told her that defendant had bumped her.

On cross-examination, Patricia testified that after she brought S.W. home, they did not have any further conversation. Patricia only asked S.W. if defendant had touched her, nothing more specific.

Bianca Jones, another of defendant's sisters, testified that on August 30, 1989, after Patricia had brought S.W. home, she took S.W. aside and asked her what happened. S.W. told her that, while she was helping the defendant do his laundry, he bumped up against her. S.W. denied that defendant had molested or touched her. She examined S.W. but found no physical indication that S.W. had been molested. S.W. also told her that defendant had his pants down "a little bit."

On cross-examination, Bianca testified that S.W. told her that defendant had bumped up against her with his "privacy." According to Bianca, she knew that S.W. was referring to a man's penis when she used the term "privacy."

Polly W., defendant's mother, testified that she was present when S.W. was questioned by David Asma, an investigator for the public defender's office. All she heard S.W. say was that the defendant bumped her. S.W. did not tell Asma that defendant rubbed his "privacy" against her.

On cross-examination, Polly testified that S.W. told Asma that defendant bumped her behind while she was bending over at a dresser looking for some clothes.

David Asma, an investigator with the Lake County public defender's office, testified that he spoke with S.W. in the presence of her father, David W. S.W. told him that while she was in the basement looking for clothes for school defendant came down and showed her a poster with three women on it. Defendant stood behind her. S.W. denied that defendant had touched her or that he had touched her private parts.

Asma further testified that David W. told him that he had received a telephone call at work from his children who told him that defendant had tried to mess with S.W. According to David W., S.W. had told him in essence that defendant had exposed himself to her. S.W. never told him that defendant had touched her.

Following closing arguments, the defendant was found guilty of two counts of aggravated criminal sexual abuse and sentenced as stated above. This appeal followed.

Defendant contends, first, that the admission of S.W.'s out-of-court statement to Officer Henriquez was reversible error. He maintains that the trial court's ruling that the statement fulfilled the requirements of section 115—10 of the Code, without affirmative findings, was inadequate as a matter of law.

Section 115—10 provides in pertinent part as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:
***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or
***

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine

the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.) We note that the statute itself does not require that the trial court set forth any specific findings or determinations.

■ Recently, in *People v. Rocha* (1989), 191 Ill. App. 3d 529, this court dealt with the issue of the unavailability for purposes of section 115—10. In the course of that opinion, however, we also held that, in conducting the hearing to determine the reliability of the victim's out-of-court statement, the evidence must show a particularized guarantee of trustworthiness. *Rocha*, 191 Ill. App. 3d at 541.

Even more recently, in *People v. Coleman* (1990), 205 Ill. App. 3d 567, the Appellate Court, Fourth District, set forth the test for determining the particularized guarantee of trustworthiness as found in *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139. The court stated as follows:

> "The Court concluded that the ' "particularized guarantees of trustworthiness" must be shown from the totality of the circumstances, but we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.' [Citation.] This test is based on the belief that evidence admissible under this exception must be, just as it is for firmly rooted hearsay exceptions, 'so trustworthy that adversarial testing would add little to its reliability.' [Citation.] The Court specifically held that this determination is to be made without the use of other evidence which may corroborate the statement. [Citation.]
>
> The Court identified a number of factors which relate to whether hearsay statements made by child witnesses in child sex-abuse cases are reliable. These include spontaneity and consistent repetition, mental state of declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. [Citation.] However, the Court further explained:
>
> 'These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining "particularized guarantees of trustworthiness" under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was

made.' " *Coleman*, 205 Ill. App. 3d at 581-82, quoting *Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 656, 100 S. Ct. at 3150.

After determining, in accordance with *Rocha*, that the child witness was unavailable, the *Coleman* court noted that while the trial court had conducted a hearing outside the presence of the jury pursuant to section 115—10(b)(1) and had found the statement admissible reciting the statutory language, *Wright* had now given greater definition to the required hearing and the finding necessary to allow admission of the evidence. The case was remanded, *inter alia*, for the trial court to conduct a second hearing and make a determination in accordance with *Wright*.

■ We have a similar situation in the case before us. The trial court conducted the requisite hearing outside the presence of the jury and, reciting the statutory language, determined that S.W.'s statement to Officer Henriquez was admissible. Without more, it is impossible to determine what factors led the trial court to conclude that S.W. was more likely to be telling the truth when she made the statement to Officer Henriquez.

The fact S.W. did, in fact, testify in this case does not lessen the need to establish the reliability of her out-of-court statement. According to S.W.'s out-of-court statement to Officer Henriquez, defendant rubbed S.W.'s groin area with his hand. However, S.W. testified only to defendant's touching her behind. Further, the statute requires the hearing before the out-of-court statement can be introduced whether the victim testifies or is unavailable. (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(b)(1), (2)(A), (2)(B).) We are aware that in *People v. Roy* (1990), 201 Ill. App. 3d 166, the court determined that the failure to hold the section 115—10(b)(1) hearing was not plain error. However, in *Roy*, the defendant received a bench trial and failed to object to the fact that no such hearing was held.

The State cites this court's opinion in *People v. Edwards* (1992), 224 Ill. App. 3d 1017, as supportive of the trial court's determination in this case. In *Edwards*, the defendant objected to the admission of certain hearsay statements pursuant to section 115—10. He argued that the circumstances surrounding the making of the statements failed to show sufficient safeguards of reliability. Unlike the case at bar, the trial court in *Edwards* gave its reasons for finding the statements reliable. This court reviewed the guidelines set forth in *Wright* for determining reliability and concluded that the statements met those guidelines. A review of the trial court's comments satisfied this court that the trial court had carefully considered the reliability issue.

Unlike the trial court in *Edwards*, the trial court in the case at bar merely recited the language of the statute in admitting Officer Henriquez' testimony as to S.W.'s statement to him. There is no indication that the trial court considered the guidelines set forth in *Wright* for determining the reliability of the hearsay statements in this case. Contrary to the State's argument, this court's opinion in *Edwards* makes it clear that the record must reflect that the safeguards of reliability have been met before such hearsay testimony may be admitted into evidence pursuant to section 115—10.

We conclude therefore that this cause must be remanded for the purpose of having the trial court state on the record the specific factors which led to its determination that the safeguards of reliability of S.W.'s hearsay statement have been met.

Next, defendant contends that he was not found guilty beyond a reasonable doubt. Defendant was charged with two counts of aggravated sexual abuse. A person commits aggravated sexual abuse if he was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed. (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) An act of sexual conduct is defined as any intentional touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused. (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).) Defendant here was charged in the indictment with rubbing S.W.'s pubic area with his hand and knowingly rubbing S.W.'s buttocks with his penis.

Defendant contends that S.W.'s testimony was ambiguous, unclear, required extensive leading questions by the prosecutor and was badly impeached by her prior statements. Defendant concludes that S.W.'s testimony was insufficient as a matter of law to support his conviction.

The resolution of factual disputes and the assessment of the credibility of the witnesses are for the trier of fact. (*Roy*, 201 Ill. App. 3d at 185.) The reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt of defendant's guilt remains. (201 Ill. App. 3d at 185.) However, in cases involving sex offenses the reviewing court has a special duty to scrutinize closely. the evidence. *People v. Nicholl* (1991), 210 Ill. App. 3d 1001, 1012.

Before the jury, S.W. testified that defendant showed her a "naked picture," that he touched her on her behind with his leg which

she demonstrated using the dolls and having the pubic area of the male doll rub up against the buttocks area of the female doll. She also testified that defendant exposed "the area between his legs" to her. On cross-examination, S.W. stated that the prosecutor told her where the places were on the doll that defendant had touched her. She did not remember telling her aunts that defendant had not touched her, but she did tell her Aunt Bianca that defendant had just bumped her. The evidence of defendant's rubbing S.W.'s pubic area came from the testimony of Officer Henriquez' testimony as to S.W.'s out-of-court statement to him. While defendant's sisters testified that S.W. told them that defendant did not touch her, his mother testified that S.W. told David Asma that defendant bumped her.

■ The resolution of this issue revolves around the credibility of the witnesses which is reserved to the trier of fact. (*Nicholl*, 210 Ill. App. at 1013.) S.W's testimony as to being bumped by the defendant was consistent. It was for the jury in this case to determine if S.W.'s out-of-court statement was sufficient to find the defendant guilty of rubbing her pubic area in light of her failure to testify to such incident and the testimony of the other witnesses who stated that S.W. denied that defendant touched her. We cannot say that, when reviewing the evidence in the light most favorable to the State, no rational trier of fact would have found the defendant guilty beyond a reasonable doubt.

Next, defendant contends that the trial court committed evidentiary errors which require that the defendant receive a new trial. Specifically, defendant argues that the trial court erroneously allowed David W. to testify as to the contents of his son's conversation with S.W.; that the trial court erroneously permitted the prosecutor to cross-examine Bianca Jones as to what S.W. meant by the term "privacy"; and that the trial court erred in limiting the defendant's questioning of Bianca as to S.W.'s proclivity toward exaggeration.

■ We agree with the defendant that David W.'s testimony concerning the content of his telephone conversation with his son was inadmissible hearsay. (See *People v. Fuelner* (1982), 104 Ill. App. 3d 340 (doctor's testimony that the victim's mother told him the victim had been raped held inadmissible hearsay).) In *People v. Escobar* (1979), 77 Ill. App. 3d 169, a witness testified that he gave a bullet shell to the police because he had been told shells had been found in the defendant's car. Although the State argued that the testimony was introduced not as hearsay but to explain why the witness brought the shell to the police, the reviewing court concluded that the danger that the jury would misuse the evidence was so much greater than the

value of detailing why the witness thought the shells were important that the testimony should have been excluded. *Escobar*, 77 Ill. App. 3d at 177.

The admission of hearsay testimony does not automatically warrant reversal. (*People v. White* (1985), 134 Ill. App. 3d 262, 283.) The admission of hearsay evidence is harmless error where there is no reasonable probability that the jury would have acquitted the defendant if the hearsay evidence had been excluded. (*White*, 134 Ill App. 3d at 283.) Prior to the testimony, the jury was instructed that the testimony was not to be considered proof that S.W. had been molested but only as a motivation for David W.'s conduct following the conversation. We are of the opinion that, given the evidence in this case together with the admonition to the jury, the defendant's conviction in this case was not due to the admission of this particular hearsay testimony.

Defendant argues that the trial court erred in permitting Bianca Jones to testify as to what S.W. meant when she referred to a "man's privacy." In *People v. Linkogle* (1977), 54 Ill. App. 3d 830, the victim's mother was permitted to testify that when the victim stated that the defendant had "wiggled his thing," the victim meant an up and down motion on his penis. The reviewing court determined that the mother's testimony was reversible error stating as follows:

> "As a general rule, testimony as to the witness' opinion is not admissible into evidence. The testimony of the witness must be confined to statements of fact of which the witness has personal knowledge. [Citation.] In some instances, of course, nonexpert opinion evidence is allowed. Nevertheless, a witness may not state his opinion or conclusion concerning an out-of-court statement, but is required to recite the statement as nearly as possible. [Citations.] Even more importantly, where the statement has been made in the presence of the jury, a second witness who testifies to what was meant by the first witness is usurping the function of the jury. It is the province of the jury to make inferences from and interpret the statements of the witnesses, having had an opportunity to hear the testimony and observe the demeanor of each witness. As a result, we believe the trial court committed reversible error by allowing Mrs. Hurlay to testify as to what Beth meant when she testified." *Linkogle*, 54 Ill. App. 3d at 833.

■ While we agree with the defendant that it was error to allow Bianca to testify as to what S.W. meant when she referred to "privacy," it is not reversible error under the facts of this case. Prior to

Bianca's testimony, S.W. had already demonstrated using the dolls that defendant had bumped her buttocks with his pubic area. She also testified that defendant exposed his "privates" to her by which she testified she meant the area between his legs. During the cross-examination of Bianca, the following colloquy took place:

"Q. And when [S.W.] talks about a man's privacy, she is referring to his penis; isn't she?
A. Yes.
MR. APPELBAUM (defense counsel): Objection.
THE COURT: Sustained.
BY MR. CHANCEY (prosecutor):
Q. Well, do you know what she means when she refers to a man's privacy?
A. Yes, but I also asked her. Yes.
Q. She told you that it was his privacy that bumped up?
A. Yes.
Q. It was against her backside?
A. Yes.
Q. Do you know when she talks about a man's privacy she is referring to his penis?
A. Yes."

The record reveals that while the defendant's initial objection to what S.W. meant by "privacy" was sustained, defendant failed to object when the question was asked a second time. The preservation of error requires that an objection be made to the complained-of testimony as well as preserving it in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Further, unlike the victim in *Linkogle*, S.W. had already identified what area of defendant's body she was referring to both in testimony and by way of demonstration with the dolls. Bianca Jones' testimony in that regard was mere surplusage.

Finally, defendant argues that it was error for the trial court to limit his questioning of Bianca Jones as to S.W.'s proclivity for exaggeration. After the trial court sustained the State's objection, defense counsel did not make an offer of proof and did not attempt to pursue that line of questioning.

As we have previously stated, credibility is a key issue in this case. Whether S.W. was prone to exaggerate things, possessed a vivid imagination or even on occasion told lies would be of vital importance to the jury whose duty it was in this case to sort out the truth. (See *People v. Morgan* (1977), 69 Ill. 2d 200 (defendant's conviction reversed where victim's credibility and veracity were seriously brought in question by her teacher's testimony that the victim had given her a

different version of the incident and by indications that the victim had the propensity to fabricate stories).) There being no physical evidence to substantiate defendant's touching or bumping of S.W., her credibility becomes the main focus even in light of the defendant's confession. See *People v. Lambert* (1984), 104 Ill. 2d 375 (defendant's confession not sufficiently corroborated by independent evidence).

The failure of defense counsel to provide an offer of proof does not waive this issue as it would have been clear to the trial court that the testimony sought was to go to S.W.'s credibility. (*People v. Christen* (1980), 82 Ill. App. 3d 192, 196.) The trial court may have expected defense counsel to rephrase his question, but instead defense counsel abandoned this line of questioning. (*Christen*, 82 Ill. App. 3d at 196-97.) Given the importance of S.W.'s credibility to the resolution of defendant's guilt or innocence in this case, we conclude that defendant must receive a new trial.

Next, defendant contends that he did not receive a fair trial due to certain statements made by the prosecutor during closing argument, specifically that to S.W. touching and bumping were not the same thing; that S.W.'s statements to her aunts and grandmother may have been unconsciously influenced by their concern for the defendant; and the suggestion on rebuttal that David Asma's testimony concerning the statements of S.W. and Polly W. was influenced by the fact he worked for the public defender's office.

A defendant is entitled to a trial free from improper prosecutorial argument, but a conviction will only be reversed if such remarks were material to the conviction and resulted in substantial prejudice (*People v. Witted* (1979), 79 Ill. App. 3d 156, 165; *People v. Franklin* (1976), 42 Ill. App. 3d 408, 415), and each case must be decided on its own facts. (*People v. Bigsby* (1977), 52 Ill. App. 3d 277, 281.) Generally, a prosecutor is allowed great latitude in making a closing argument. (*People v. Jordan* (1990), 205 Ill. App. 3d 116, 122.) However, a prosecutor may not, *inter alia*, make arguments not based upon the evidence. (*Witted*, 79 Ill. App. 3d at 165-66.) The entire context in which a prosecutor offers statements as well as defendant's closing argument must be considered. *People v. Phillips* (1989), 127 Ill. 2d 499, 524.

■ Defendant failed to object to the portions of the State's arguments of which he now complains. Therefore, they are waived. (*Phillips*, 127 Ill. 2d at 526.) Moreover, the jury was instructed that the closing arguments were not evidence. Finally, we are satisfied that the complained-of remarks did not sink to the level of the remarks which caused reversal in the cases relied on by the defendant.

*People v. Emerson* (1983), 97 Ill. 2d 487 (prosecutor's remarks suggested that defense counsel had created defenses and had suborned perjury); *People v. Starks* (1983), 116 Ill. App. 3d 384 (prosecutor asserted defense counsel engaged in trickery or misrepresentation to gain an acquittal); *People v. Escobar* (1979), 77 Ill. App. 3d 169 (prosecutor's introduction of "new evidence" during rebuttal portion of closing arguments reversible error).

We conclude that the prosecutor's comments during closing argument did not deprive the defendant of a fair trial.

Finally, defendant contends that he received ineffective assistance of counsel. Defendant argues that defense counsel did not offer evidence at trial of the circumstances of defendant's confession; that he failed to make an offer of proof during Bianca Jones' testimony; failed to object to the prosecutor's improper comments during closing arguments; and that his cross-examination of David W. led to the introduction of S.W.'s hearsay statement that defendant had exposed himself and rubbed up against her behind.

We have previously determined that defense counsel's failure to make an offer of proof did not waive the issue as to Bianca Jones' testimony. Despite defense counsel's failure to object, we reviewed the complained-of statements made during closing argument and concluded that they did not deprive the defendant of a fair trial.

Defendant did not testify at trial thus rendering impossible any effort to show the circumstances of his confession from his point of view. The trial court denied defendant's motion to suppress the confession because he found Officer Henriquez' testimony more credible than that of the defendant. Defense counsel did cross-examine Officer Henriquez at trial which revealed that Henriquez did not tape-record or videotape the confession; that he, not the defendant, wrote out the statement which defendant signed; and that his case against the defendant would be better if he had an inculpatory statement from the defendant. Moreover, there is a strong presumption that the challenged actions of trial counsel were the product of sound trial strategy and not incompetence. (*People v. Steidl* (1991), 142 Ill. 2d 204, 241.) The recounting of the circumstances of the defendant's confession would only serve to remind the jury that defendant had confessed, and defense counsel's choice not to bring up defendant's confession is certainly defensible as trial strategy. Finally, while defense counsel's cross-examination of David W. did elicit that S.W. told him that defendant bumped her, that evidence was testified to by defense witnesses, as well as by the State's witnesses. Therefore, we are of the opinion that none of these alleged instances of incompetency or

their cumulative effect led to the defendant's conviction. *People v. Albanese* (1984), 104 Ill. 2d 504, 525.

In light of the conclusions we reach in this case, defendant's conviction is reversed, and this cause is remanded for a new trial. In the event the State wishes again to introduce S.W.'s hearsay statement to Officer Henriquez, a new hearing under section 115—10 need not be held. However, as we previously stated above, the trial court shall state on the record the specific factors which led to its determination that the safeguards of reliability of S.W.'s hearsay statement have been met.

The judgment of the circuit court is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

McLAREN, J., concurs.

JUSTICE DUNN, dissenting:

I respectfully dissent because I disagree with the majority's resolution of two issues. First of all, I believe that, by failing to make an offer of proof, defendant waived the issue of whether the trial court erred by sustaining the State's objection when defense counsel asked Bianca Jones if she had ever known S.W. to exaggerate the truth to her.

In general, an offer of proof must be made in order to preserve the issue of wrongful exclusion of evidence for review. (*People v. Cobb* (1989), 186 Ill. App. 3d 898, 905.) If the testimony to be elicited is obviously relevant and material, no offer of proof is required. (*Cobb*, 186 Ill. App. 3d at 905.) A detailed and specific offer of proof is required, however, if it is not clear what the testimony of the witness will be or what basis the witness will have for so testifying. 186 Ill. App. 3d at 905.

In *Cobb*, this court held that, because the defendant failed to make a specific, detailed offer of proof, he waived the issue of whether the trial court erred by excluding a police officer's testimony as to a certain matter. (186 Ill. App. 3d at 905-06.) In so holding, this court noted that it could not determine from the record exactly what the substance of the officer's testimony would have been or the basis of that testimony. (186 Ill. App. 3d at 905.) We further stated that it was conceivable that the officer's testimony could have been based on what others had told him and would have therefore been inadmissible hearsay. (186 Ill. App. 3d at 905-06.) It was thus impossible to deter-

mine from the record whether the exclusion of the testimony constituted reversible error. 186 Ill. App. 3d at 906.

The same is true in the case at bar. This court has no way of knowing how Bianca Jones would have responded to the question at issue here. Thus, it is impossible to determine whether defendant was prejudiced by the trial court's ruling. (See *People v. Moreno* (1983), 116 Ill. App. 3d 1, 6.) It is also possible, as it was in *Cobb*, that the basis for the testimony could have been a conversation with another person. Jones may have testified that S.W. told her something and she found out from someone else that it was not true. This would have constituted inadmissible hearsay. Because defendant's failure to make an offer of proof makes it impossible to determine whether reversible error occurred, I would hold that he has waived the issue of whether the trial court erred by sustaining the objection to the question his attorney asked Bianca Jones.

I also disagree with the majority's conclusion that a remand is necessary for the purpose of having the trial court articulate specific factors which led to its conclusion that S.W.'s hearsay statement to Officer Henriquez should be admitted into evidence under section 115—10 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 115—10). Under section 115—10(b)(1), such a statement is admissible if the trial court "finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability." (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b)(1).) The trial court did make such a finding in this case. The statute does not require trial judges to articulate specific reasons in support of such findings.

The majority concludes that a remand is necessary to ensure that the trial court's admission of S.W.'s hearsay statement was consistent with the United States Supreme Court's opinion in *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, which was issued after the trial in this case. The standard in section 115—10, which requires "sufficient safeguards of reliability" based upon the "time, content, and circumstances of the statement," is in my view effectively the same as the *Wright* standard of "particularized guarantees of trustworthiness" based solely upon the circumstances surrounding the statement (*Wright*, 497 U.S. at 822, 111 L. Ed. 2d at 656, 110 S. Ct. at 3149). Section 115—10, like the court's opinion in *Wright*, requires trial courts to focus solely upon the circumstances surrounding the statement and to determine whether those circumstances make it particularly likely that the declarant was telling the truth when she made the statement. Because the Illinois standard ap-

plied here was essentially the same as the one set forth in *Wright*, I do not believe it is necessary to remand the case in order to ensure compliance with *Wright*.

A trial court's finding after a section 115—10(b)(1) hearing should only be overturned on appeal if it was contrary to the manifest weight of the evidence. (*People v. Deavers* (1991), 220 Ill. App. 3d 1057, 1068.) In the case at bar, S.W. had no motive to fabricate, and she did not use terminology that would be unexpected of a child her age. (See *Wright*, 497 U.S. at 821-22, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150.) Furthermore, although Officer Henriquez did question S.W., he testified that the questions were open-ended rather than leading. (See *People v. Edwards* (1992), 224 Ill. App. 3d 1017, 1029.) Finally, the statement was made only a few hours after the alleged incident. In light of these factors, the trial court's decision to admit testimony about the statement was not against the manifest weight of the evidence and should have been affirmed.

For the above reasons, I would affirm defendant's conviction. I, therefore, respectfully dissent.