THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD CARTER, Defendant-Appellant.

First District (5th Division)   No. 1—89—3392

Opinion filed April 16, 1993.

Rita A. Fry, Public Defender, of Chicago (Lynne Hubanks Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Margaret M. Regan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Richard Carter was found guilty of criminal sexual assault and aggravated criminal sexual assault and sentenced to an extended term of 46 years in the Illinois Department of Corrections. In appealing this conviction defendant alleges that the trial court erred in allowing the use of anatomical dolls; that impermissive corroborative hearsay statements were admitted; that he was not proven guilty beyond a reasonable doubt; that the jury instructions did not enumerate the specific sexual acts; and that the trial judge erred in considering the victim's age as a factor to enhance defendant's sentences.

Defendant did not testify at trial, and the following testimony was adduced by the State.

### 1. TESTIMONY OF THE ALLEGED VICTIM, L.C.

On October 16, 1989, a competency hearing was held, in which the judge determined that based on the fact that L.C. had the ability to recollect events with detail, and understood the difference between telling a lie and telling the truth, she was competent within the law. At trial, five-year-old L.C. testified that on July 30, 1988, a man (whom she later identified at a police lineup as "Quiro"—the Spanish name for a white person with light hair) called her into the yard next door to her house, took her hand and pushed her into the basement of another neighbor's house. While in the basement, the man allegedly pulled down L.C.'s pants, unzipped his own pants and inserted his finger into her vagina. She further testified that this person put his penis into her mouth after which she pulled up her pants. (Over defense objection, the State used an anatomical male doll to demonstrate that L.C. could correctly identify the body parts.) L.C. further testified that she had told her sister, Mayra C., and her mother, Magdalena F.,

what had happened to her. These witnesses testified at trial (over defense objections) to their conversations with the alleged victim.

### 2. TESTIMONY OF MAYRA C.

Following a competency hearing, Mayra C., L.C.'s seven-year-old sister, said that when she and L.C. were playing on July 31, 1988, the day after the alleged incident, L.C. told her that "he done something down here, some guy." Mayra also testified that on August 1, 1988, on the way home from the park, L.C. again spoke about what had happened to her. At this time, L.C. allegedly said that "he said if she wanted gum and she took it and he pulled her hand to the next door from, not his house, to [sic] another house." The State then asked Mayra whom L.C. had been talking about and, over a sustained objection, Mayra answered "Ricardo." Additionally, Mayra testified that L.C. told her "that he pulled her shorts down *** took out his penis *** put his finger in her vagina *** and put his penis in her mouth."

### 3. TESTIMONY OF MAGDALENA F.

Magdalena, the mother of L.C. and Mayra, testified that on July 30, 1988 (the day of the alleged incident), she saw L.C. on the back porch crying. L.C. made no statements to her at that time. Later, on August 1, 1988, when Magdalena took her daughters and her nieces to the park, she heard L.C. "telling my nieces that the Quiro had grabbed her, that he had given her gum. He asked her if she wanted a ride. He had pulled down her shorts, her underwear, and that he put his penis in her mouth and the finger, he put it in her vagina."

### 4. TESTIMONY OF DR. GONZALEZ

Dr. Gonzalez, an ·emergency room physician at St. Mary's Hospital, testified that he examined L.C. in the early morning hours of August 2, 1988, and that L.C. had an "inflammation of the genital area." The cause of the inflammation was unknown and the tests indicated no presence of semen. Dr. Gonzalez stated that L.C. said only "that a man put his finger on her genitals."

### 5. TESTIMONY OF OFFICER CORONA

Officer Corona testified that he interviewed L.C. and her mother at the police station and that he took them to St. Mary's Hospital. Cross-examination elicited the fact that while Officer Corona spoke directly to L.C., it was the mother who responded to him. The officer credited this to the fact that the child was very shy.

On appeal, defendant first argues that the court erred in denying his pretrial motion to exclude the use of anatomical dolls during trial. He contends that the use of these dolls was prejudicial and also unnecessary as L.C. was able to identify correctly the body parts without any such demonstrative aids. During the *voir dire* to determine L.C.'s competency to testify, the court also asked the State to show how it intended to use the dolls at trial. In response to the prosecutor's questions, L.C. identified the body parts correctly with the exception of using the word "peanuts" for penis and referring to the posterior as "tail." Based on this examination, the trial judge determined (over defense objection) that the limited use of the dolls was indicated. However, at trial, during direct examination, L.C. used correct terminology for the body parts at issue. When the State attempted to introduce the dolls, the defense renewed its objection based on the fact that the testimony of the witness was clear and unambiguous. The court, however, allowed the dolls to be introduced as an appropriate way of verifying L.C.'s testimony.

■ Case law supports the trial court's decision allowing the use of anatomical dolls. The use of anatomically correct dolls as testimonial aids by young children who are alleged victims of sexual abuse has been permitted by courts in several States: Indiana (*Newton v. State* (Ind. 1983), 456 N.E.2d 736); Louisiana (*State v. Watson* (La. Ct. App. 1986), 484 So. 2d 870); Massachusetts (*Commonwealth v. Trenholm* (1982), 14 Mass. App. 1038, 442 N.E.2d 745); Michigan (*In re Rinesmith* (1985), 144 Mich. App. 475, 376 N.W. 2d 139); Minnesota (*State v. Eggert* (Minn. Ct. App. 1984), 358 N.W.2d 156); Mississippi (*Murriel v. State* (Miss. 1987), 515 So. 2d 952); and North Carolina (*State v. Fletcher* (1988), 322 N.C. 415, 368 S.E.2d 633). In a recent Illinois decision (*People v. Roman* (1992), 260 Ill. App. 3d 436), this court determined that the use of an anatomically correct doll by a seven-year-old sexual abuse claimant was appropriate. Even though none of the aforementioned authority involves exactly the same factual scenario as the case at bar—the incorrect and then correct identification of body parts by a child claimant—we nevertheless find it persuasive in determining that the use of an anatomical doll at trial was appropriate. In reaching our conclusion that the use of the doll was more probative than prejudicial, we considered (in addition to the cited case law) the limited use of the doll at trial (only one doll was used and it was employed simply to demonstrate that L.C. knew the names of the body parts), the age of the alleged victim, her soft voice (the judge kept asking her to speak up), and the fact that an interpreter was used because of the language problem.

■ Defendant next contends that the trial court erred in denying his motion *in limine* to exclude out-of-court statements of L.C. to Mayra and Magdalena. The statements at issue are the one made to Mayra on July 31, 1988, the day after the incident, and the one made to Mayra and her cousins and overheard by Magdalena on August 1, 1988, on the way home from the park. The trial court considered the testimony of Mayra regarding the July 31 statement admissible under the prompt outcry or spontaneous declaration theory. It is undisputed that there are three factors to be considered when determining the admissibility of a statement under this exception to the hearsay rule: (1) there must be an occurrence sufficiently startling to produce a spontaneous and unreflected statement, (2) absence of time to fabricate, and (3) the statement must relate to the circumstances of the occurrence. (*People v. Hart* (1991), 214 Ill. App. 3d 512, 573 N.E.2d 1288.) It is well settled that an incident of sexual conduct between an adult and a child of "tender years" is an occurrence sufficiently startling to produce a spontaneous statement (*People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208) even though the child may not react in an "excited manner." (*Hart*, 214 Ill. App. 3d at 522, 573 N.E.2d at 1295.) Thus, just because L.C. went straight home after the incident, looked very sad and was crying, did not speak to her mother and went right to sleep does not defeat the claim that she experienced a startling occurrence. In fact, because she made a spontaneous and uninvited statement to her sister the next morning (that "some guy did something down here"), it was sufficient to show that she was still stressed by this occurrence. With respect to absence of time to fabricate, it is not the absence of time alone that controls the admissibility of the statement (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395); rather, it is the motivation of the declarant that is important. (*In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912.) The basic rationale for the admission of the statements of very young children is that it is unlikely that they will have any reason to fabricate. The third factor to consider in determining if the statement is admissible under the spontaneous declaration or prompt outcry exception is whether the statement relates to the circumstances of the occurrence. L.C.'s statement to her sister on the morning after the occurrence that "he done something down here, some guy," clearly refers to the alleged sexual abuse. We conclude, as did the trial court, that the statement at issue was properly admitted under the relied-on exception to the hearsay rule.

The trial court considered the testimonies of Mayra and Magdalena as to L.C.'s statements made on August 1, 1988, on the way

home from the park admissible pursuant to the standards set out in section 115—10(a)(2) of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2)). This authority provides in relevant part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13 *** the following evidence shall be admitted as an exception to the hearsay rule:

***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

Defendant alleges that the court erred in allowing the hearsay testimony offered by Mayra and Magdalena in that it did not comply with the statutory requirements of a reliability hearing held outside the presence of the jury. In response, the State maintains that the hearing, which was held pursuant to defendant's motion *in limine* to preclude the use of any hearsay statements pursuant to section 115—10, was sufficient to satisfy the statutory reliability requirements. In this regard, the State contends that at this hearing the trial court considered the time and circumstances under which the statements were made. The State further argues that the trial court had consid-

ered the contents of the statements at issue when it reviewed the police reports. In support of its contention that a separate reliability hearing is not required by statute, the State cites *People v. Balle* (1992), 234 Ill. App. 3d 804, 601 N.E.2d 788, *People v. Hart* (1991), 214 Ill. App. 3d 512, 573 N.E.2d 1288, and *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208. The State correctly notes that these authorities, which also considered the admissibility of testimony as to a minor's out-of-court statements in a sexual abuse trial, did determine that a trial judge's failure to conduct a separate reliability hearing was harmless error. However, these cases are distinguishable from the case at bar, as they all involved bench trials, while the instant action involved a trial before a jury. As the *Balle* court stated, " 'the requirement of a 'hearing outside the presence of the jury' is not wholly inapplicable to bench trials.' " (*Balle*, 234 Ill. App. 3d at 816, quoting *Hart*, 214 Ill. App. 3d at 524.) However, since the trial judge is presumed to have considered only admissible evidence, he may be presumed to have considered only the time, content, and circumstances under which the statement was made in determining the reliability of the statement. Therefore, even though the aforementioned decisions never articulate their findings as to the reliability of the out-of-court statements, such omission may be considered harmless error. These decisions are not instructive as to what procedures must be followed in conducting a reliability hearing when the statements under consideration will be presented to a jury.

■ Initially, we note that the statute itself does not require that the trial court set forth any specific findings or determinations regarding its conclusions as to reliability. The appellate court has dealt with this issue in *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010, *People v. Rocha* (1989), 191 Ill. App. 3d 529, 547 N.E.2d 1335, and most recently in *People v. West* (1992), 234 Ill. App. 3d 578, 598 N.E.2d 1356. The *Rocha* court, which relied on the United States Supreme Court's decision in *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, in analyzing the issue of unavailability (for purposes of determining the constitutionality of section 115—10), held that in conducting the hearing to determine the reliability of the victim's out-of-court statement, the evidence must show a particularized guarantee of trustworthiness. (*Rocha*, 191 Ill. App. 3d at 541, 547 N.E.2d at 1342.) More recently, in *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010, the court set forth the factors for determining the particularized guarantee of trustworthiness as found in the Supreme Court decision of *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139. These include spontaneity

and consistent repetition, mental state of declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. (*Coleman*, 205 Ill. App. 3d at 581-82, 563 N.E.2d at 1019.) The *Coleman* court further noted that although the trial court in the case under its consideration had (after determining that the child witness was unavailable) held a reliability hearing outside the presence of the jury, it had found the statement admissible after merely reciting the statutory language. The *Coleman* court further stated that after *Wright*, greater definition had been given to the required hearing and the finding necessary to allow the admission of the evidence. Accordingly, it remanded the case before it to the trial court to make a determination in accordance with *Wright*. (*Coleman*, 205 Ill. App. 3d at 584, 563 N.E.2d at 1022.) Similarly in *People v. West* (1992), 234 Ill. App. 3d 578, 598 N.E.2d 1356, the reviewing court remanded the case under consideration to the trial court, which had merely recited the statutory language, without indicating that it had followed the guidelines set out in *Wright* and without reflecting for the record that the safeguards of reliability had been met. (*West*, 234 Ill. App. 3d 578, 598 N.E.2d 1356.) Relying on the aforementioned United States and Illinois authorities, we find that the hearing in the case at bar did not provide adequate guarantees of trustworthiness as it did not reflect the reasoning of the trial judge as to the reliability of the corroborative testimony. We therefore remand on this basis to the trial court so that it may conduct a second reliability hearing and make a determination in accordance with *Wright* and its progeny.

We further conclude, as argued by defendant, that the State did not comply with the statutory requirements of notice as to the hearsay testimony it intended to use. Although the trial court found that the furnishing of police reports and lists of potential witnesses satisfied the demand for notice, we do not agree. If only police reports, summaries, and lists of witnesses were required, these would be covered by general discovery, and no particular statutory provisions would be necessary. We read the statute as requiring more specific notice to defendant than that which would be forthcoming in response to an ordinary demand for discovery. The statutory provisions under consideration require that defendant be provided with the specific hearsay testimony of the child victim which will be presented at trial in order to protect him against surprise, unfairness, and inadequate preparation.

▐ Defendant also contends that he was not proven guilty beyond a reasonable doubt. Although admitting that the testimony of one credible witness may be sufficient to convict (*People v. Novotny*

(1968), 41 Ill. 2d 401, 244 N.E.2d 182), defendant argues that the testimony of L.C. absent what he contends are the improperly admitted prior consistent hearsay statements testified to by her sister and her mother is insufficient to convict. We decline to address this issue, as we find that it will be best resolved by the trier of fact if upon remand the statements at issue are found to be unreliable.

Defendant additionally argues that even if the prior consistent hearsay testimony was properly admitted, it is not believable because too many details were the same in the testimony of several witnesses. Well-established case law holds that issues of credibility are to be determined by the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Furthermore, the case on which defendant relies to support his argument of too much consistency is not persuasive as it involved (in addition to consistencies) a number of witnesses who significantly changed their trial testimonies from those given earlier, as well as a number of inconsistent details. (*People v. McCarthy* (1981), 102 Ill. App. 3d 519, 430 N.E.2d 135.) Defendant also maintains that the hearsay testimonies at issue improperly bolstered the testimony of L.C. This contention is in direct opposition to the statutory provision allowing testimony that a corroborative complaint was made by a child victim. Ill. Rev. Stat. 1987, ch. 38, par. 115—10(b)(2)(B).

Defendant finally argues that the record as a whole does not support the factual findings of guilt beyond a reasonable doubt of criminal sexual assault and aggravated criminal sexual assault. In support of this position, defendant raises the testimony of Dr. Gonzalez that L.C. told him a "man pulled her pants down and put his finger *on* her genitals" (emphasis added), yet she testified and told her sister and mother that the man had put his finger *in* her vagina. The State maintains, and we agree, that even if defendant's finger was "on" the victim's genitals, such contact would still be sufficient to come within the statutory definition of sexual penetration, which includes "any intrusion, however slight." (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).) Additionally, defendant suggests that the redness to the victim's vaginal area could have been caused by the victim "herself scratching, playing, and falling and hurting herself." There is, however, no evidence in the record to support this theory. Defendant argues that there was no presence of semen. However, the presence of semen is not necessary to prove penetration. (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f).) Defendant also contends that there was no evidence that anyone saw him in the yard and that no fibers or hair samples were found which would identify the defendant. Even though such evidence would have made for a stronger case against the defendant, we can-

not say that the victim's identification of him as "Quido," "Quiro," "Ricky," or "Ricardo," as well as the corroborative complaint testimony of Mrs. Flores (who testified that "Quiro" was an expression used to describe the defendant), was insufficient to convict. Defendant further asserts that all statements taken by the police came from Mrs. Flores. The fact that Mrs. Flores did act as an interpreter for L.C. during police interviews, and did furnish some of the requested information directly to the police, was fully developed at trial and goes to the weight and credibility of the testimonies admitted.

Accordingly, after viewing all of the evidence admitted in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime (that defendant was 17 years old or over and committed an act of sexual penetration with a five-year-old child) beyond a reasonable doubt. If, on remand, it is determined that the corroborative hearsay testimonies meet the requisite reliability demands, defendant's conviction is affirmed. If, however, the corroborative hearsay statements are found to be inadmissible, then a new trial is required to reweigh the evidence against defendant.

■ Defendant also contends that error occurred because the jury instructions and verdict forms were generic and failed to specify the individual act or acts upon which the verdict was based. He argues that because the instructions and verdict forms did not specify the individual acts upon which they were based there was a possibility that the verdict was based on one of the alleged acts (penis-vagina contact) despite a prior directed finding of not guilty as to that act. In response, the State maintains that there was no error in jury instructions and, additionally, that any error would have been waived by defendant's failure to object at trial and in a post-trial motion. While Supreme Court Rule 451 does provide that substantial defects in instructions are not waived, "if the interests of justice require," this exception has been applied to correct grave error or when cases are so factually close that fundamental fairness requires proper instruction. (87 Ill. 2d R. 451(c).) Assuming, *arguendo*, that defendant's objections have not been waived, we find that any error in instructions is harmless. In the case at bar, the court instructed the jury on the elements of each offense—aggravated criminal sexual assault and criminal sexual assault—as well as the definitional instruction for sexual penetration. Defendant contends that the specific conduct constituting penetration is also an element of the offense and as such should have been included in the jury instructions. Illinois case law provides that the type of sexual penetration is not an element of the offense, and its

inclusion in the indictment is merely surplusage. (*People v. Foley* (1990), 206 Ill. App. 3d 709, 565 N.E.2d 39.) If the statutory language used describes specific conduct, it is unnecessary for the indictment to specify the exact means by which the conduct was carried out. The State need only prove that a type of sexual penetration occurred beyond a reasonable doubt. (*Foley*, 206 Ill. App. 3d at 718, 565 N.E.2d at 46.) Defendant, however, maintains that because three individual acts of sexual penetration were specified in the indictment, and that one of these was directed out without the knowledge of the jury (penis/vagina contact), the jury might have found him guilty of that act.[1] Defendant also argues, though unpersuasively, that given the generic instructions, the jury may have found him guilty of two counts based on the same conduct. Since no testimony regarding penis/vagina contact was presented at trial, and closing arguments focused on the other two remaining sexual acts, we cannot see how the jury would have found defendant guilty on this charge. Furthermore, case law supports the fact that sexual acts themselves are not required to be detailed in the instructions. (*Foley*, 206 Ill. App. 3d 709, 565 N.E.2d 39.) Therefore, we cannot find that the surplusage in the indictment combined with the "generic" but appropriate jury instructions prejudiced defendant in any way.

Defendant finally argues that the trial court abused its discretion in sentencing him to 46 years in the Department of Corrections. He contends that the court erred in considering the young age of the victim as evidence in aggravation, as such factor is one of the elements of the offense of aggravated criminal sexual assault. However, the State maintains and Illinois case law interpreting the statutory extended sentencing provisions supports the consideration of the victim's age in the case at bar. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 547 N.E.2d 429; *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010.) In *Ferguson*, the Illinois Supreme Court stated, in referring to section 5—5—3.2(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(c)), that it considered this section as an example of clear legislative intent to permit a double enhancement of the penalty. (*Ferguson*, 132 Ill. 2d 86, 547 N.E.2d 429.) *Coleman* followed the guidelines set out in *Ferguson* and found that if

---

[1]We note that when the trial judge granted defendant's motion for a directed verdict on this count, the State made a motion *in limine* to preclude defense counsel from mentioning to the jury that some counts had been dismissed out. Not only did defense counsel not object at this point, but replied that he had no intention of "doing that" (alluding to the dismissed out counts) anyway.

(following its remand for a new trial) defendant was again found guilty of aggravated criminal sexual assault, the consideration of the victim's age as an aggravating factor in imposing an extended-term sentence would be appropriate even though the victim's age was an element of the offense itself. (*Coleman*, 205 Ill. App. 3d 567, 563 N.E.2d 1010.) Additionally, the court considered other aggravating factors in imposing the extended sentence, one of which was defendant's criminal record consisting of three major felony convictions within a 10-year period.

■ Defendant also contends that the trial judge erred in setting the extended term by considering that the jury found the defendant guilty of penis/mouth penetration, because from the generic jury instructions it is impossible to tell what acts the jury actually considered. In this regard we note that the objected-to comment of the trial judge—that there is "nothing more disgusting"—was based on the evidence presented at trial. (L.C. had testified that defendant put his penis in her mouth and told her that "milk would come out.") Furthermore, the record as a whole, including the other aggravating factors, supports the judge's determination and imposition of sentence. Defendant further maintains that the sentence of 46 years, which the trial judge fashioned so that he would stay in the penitentiary until he is too old to commit these types of crimes (defendant was 17 years old at the time of sentencing and presumably would be incarcerated under this sentence until he was 60), was not based on reliable, accurate information, as defendant had not been convicted of any other sex-related crimes. Again, our review of the sentencing hearing reveals that the trial judge considered the record as a whole, including defendant's past felony convictions. We cannot say that because none of these involved similar sex offenses the sentence imposed was unwarranted. Neither can we find that the judge's remarks exhibited such prejudice or disregard for the law so as to warrant reversal. See *People v. Bolyard* (1975), 61 Ill. 2d 583, 585, 338 N.E.2d 168 (which the Illinois Supreme Court reversed and remanded, because the remarks of the trial judge indicated that he had refused to consider probation (which was statutorily authorized as a sentencing alternative) because he felt that the offense charged (taking indecent liberties with a child) was the "most sinful, reprehensible act of all offenses").

Accordingly, for the reasons expressed herein, we remand to the trial court for the purpose of holding a hearing to determine the reliability of the hearsay statements admitted pursuant to section 115—10(a)(2). (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2).) If, the trial court determines that such statements meet the criteria for reliability

as defined by *Wright*, then defendant's conviction and sentence are affirmed. If, on the other hand, it is determined that the out-of-court statements are not reliable, then defendant's conviction and sentence are reversed and the case remanded for a new trial.

Remanded with instructions.

MURRAY and COUSINS,* JJ., concur.

---

*Justice Cousins has read the briefs and listened to the tape in this appeal in place of Justice Lorenz, who has retired.