2016 IL App (4th) 150004

NO. 4-15-0004

FILED
April 25, 2016
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| JASON C. JOHNSON, | ) | No. 13CF163 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justice Holder White concurred in the judgment and opinion.
Justice Turner specially concurred.

**OPINION**

¶ 1     In January 2014, defendant, Jason C. Johnson, was indicted on two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), alleging that he committed acts of sexual penetration with M.B., who was less than 13 years of age.

¶ 2     Prior to trial, the State filed a motion *in limine*, seeking to introduce evidence under the hearsay exception of section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2012)).  Specifically, the State sought to introduce (1) a digital video- and audio-recording of M.B.'s interview with a child-advocacy counselor, conducted when M.B. was seven years old, in which M.B. described the alleged assaults; and (2) testimony from M.B.'s mother, Shelly, about statements M.B. made to her when M.B. was six years old, describing the alleged assaults.  The trial court granted the motion in a written order.

¶ 3        During defendant's May 2014 jury trial, the State introduced the hearsay evidence described above. The jury found defendant guilty on both counts. The trial court sentenced defendant to two terms of 20 years in prison, to be served consecutively.

¶ 4        Defendant appeals, raising several arguments: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the trial court abused its discretion by admitting hearsay evidence under section 115-10 of the Code; (3) the court erred by entering an insufficiently detailed order when admitting the hearsay statements under section 115-10; (4) the court abused its discretion by admitting the recording as substantive evidence without laying a proper foundation; (5) trial counsel was ineffective for failing to object to (a) the court's insufficiently detailed order admitting evidence under section 115-10, (b) testimony that was not presented at the section 115-10 hearing, and (c) the admission of the recording as substantive evidence or to request a jury instruction prohibiting its use as substantive evidence; and (6) the court imposed an excessive sentence. We affirm.

¶ 5                              I. BACKGROUND

¶ 6        In January 2014, the State charged defendant with two counts of predatory criminal sexual assault of a child. The charges alleged that between December 2011 and November 2013, defendant twice committed an act of sexual penetration with M.B.—once with his finger and once with his penis—while M.B. was less than 13 years of age and defendant was 17 years of age or older.

¶ 7              A. The State's Motions To Admit Hearsay Under
                        Section 115-10 of the Code

¶ 8        In February 2014, the State filed two motions to admit hearsay statements pursuant to section 115-10 of the Code (*id.*). The first motion sought to admit recorded statements made by M.B. during an interview with a victims' advocate, Tara Crady. The second motion

sought to admit testimony by M.B.'s mother, Shelly, as to statements M.B. made to Shelly.

¶ 9    Later that month, the trial court held a hearing on the motions. Crady and Shelly testified at the hearing. In March 2014, the court filed a written order granting the State's motions. The court found that the statements at issue contained sufficient safeguards of reliability.

¶ 10    B. The Evidence Presented at Trial

¶ 11    1. *The State's Evidence*

¶ 12    At the May 2014 jury trial, Shelly testified that she lived with her boyfriend, Larry, and her daughter, M.B., who was born in 2006. Defendant was M.B.'s father. M.B. visited him every other weekend. In November 2013, when M.B. was six years old, M.B. told Shelly that "[D]addy likes to make sure my special spot is clean." When Shelly asked what M.B. meant by that statement, M.B. said that defendant took off her pajamas and underwear and stuck his fingers in her "special spot." Shelly asked if defendant ever made M.B. touch his "private area," and M.B. responded, "No" but said that "he would wet it and stick it on her private area."

¶ 13    Shelly immediately called her friend, whose husband was a police officer. Based on the officer's advice, Shelly took M.B. to the emergency room that night. Approximately one week later, in December 2013, Shelly took M.B. to the Illinois Children's Advocacy Center, where an examiner conducted a forensic recorded interview with M.B.

¶ 14    M.B., who was seven years old at the time of the trial, testified that defendant "licked his finger and put it in my private" while M.B. was visiting his house. M.B. was alone in her bedroom, asleep, when defendant entered and woke her up. He put his hand under the blanket that was covering M.B., and M.B. felt his finger move inside her "private." M.B. testified further that defendant touched her in a similar way on "a lot" of occasions, but he never touched "his privates" against M.B.'s "privates." M.B. told her mom about the touching while they were

- 3 -

in the car.

¶ 15 Maureen Hofmann testified that she was employed as an advanced-practice nurse at the Pediatric Resource Center at the University of Illinois College of Medicine in Peoria. The trial court granted the State's request to have her tendered as an expert in the examination of children alleged to have been sexually abused. On December 4, 2013, Hofmann examined M.B. Hofmann testified that she conducted an external examination of M.B.'s genitals using a colposcope. The examination did not reveal any evidence of the abuse reported by M.B. Hofmann clarified that the results of the examination did not rule out the abuse reported by M.B., because in 95% of cases in which children report sexual abuse, their examinations do not reveal physical evidence of abuse.

¶ 16 Tara Crady testified that she worked for the Tazewell County Children's Advocacy Center. On December 3, 2013, when M.B. was seven years old, Crady interviewed M.B. about her complaints that defendant committed sexual assault. A recording of that interview was played for the jury. The State rested.

¶ 17 Defendant moved for a directed verdict, arguing that the evidence was insufficient, because it showed inconsistencies in M.B.'s statement. The trial court denied the motion.

¶ 18                     2. *Defendant's Evidence*

¶ 19 Kara E. testified that she was defendant's sister. Kara had a six-year-old child, H.E., with whom she had visitation every other weekend. When Kara had visitation with H.E., she would arrange to meet up with defendant and M.B. Kara testified that M.B. had a normal interaction with defendant and seemed happy with him. On November 3, 2013, Kara, H.E., defendant, and M.B. were all visiting at Kara's and defendant's parents' house. H.E. and M.B. were playing in H.E.'s bedroom. When Kara went to check on them, she found them both lying in bed

together naked. Kara noticed that H.E.'s "little pee pee was hard." H.E. and M.B. told Kara that they were "just hugging and kissing."

¶ 20   Ketra Eichelkraut testified that she was defendant's live-in girlfriend for 2 1/2 years. She described defendant as a "loving father." On November 3, 2013, she and defendant visited defendant's parents' house, along with M.B., Kara, and H.E. Ketra left the house for a while and received a phone call from defendant telling her that "something had happened with [H.E.] and [M.B.]" When Ketra returned to defendant's parents' house, defendant was talking to M.B. "about the incident what had happened, why we don't do those things, and good touch, bad touch, things like that." Ketra testified further that she had also talked to M.B. previously about "good touching, bad touching."

¶ 21   Defendant testified that prior to the allegations in this case, he had visitation with his daughter every other weekend. In October or November 2013, defendant and Shelly got into an argument about visitation for M.B. Shelly was planning to move to an area that was farther away from defendant and wanted defendant to meet her halfway when transporting M.B. from visitation.

¶ 22   Defendant testified further that he never touched his daughter in a sexual way, nor did he place his finger or penis on or in her genitals. He stated that he had very little alone time with M.B. because Ketra or defendant's son were usually around.

¶ 23   The jury found defendant guilty on both counts. After an August 2014 sentencing hearing, the trial court sentenced defendant to consecutive terms of 20 years in prison.

¶ 24                                        II. ANALYSIS

¶ 25   Defendant argues that (1) the evidence was insufficient to prove him guilty be-yond a reasonable doubt; (2) the court abused its discretion by admitting hearsay evidence under

section 115-10 of the Code (725 ILCS 5/115-10 (West 2014)); (3) the court erred by entering an insufficiently detailed order when admitting the hearsay statements under section 115-10; (4) the court abused its discretion by admitting the recording as substantive evidence; (5) trial counsel was ineffective for failing to object to (a) the court's insufficiently detailed order admitting evidence under section 115-10, (b) testimony that was not presented at the section 115-10 hearing, and (c) the admission of the recording as substantive evidence or to request a jury instruction prohibiting its use as substantive evidence; and (6) the court imposed an excessive sentence.

¶ 26                              A. Sufficiency of the Evidence

¶ 27         Defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt. Specifically, he argues that the evidence was insufficient to prove that he committed acts of sexual penetration. We disagree.

¶ 28         "We will reject a challenge to the sufficiency of the evidence if any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *In re Raheem M.*, 2013 IL App (4th) 130585, ¶ 32, 1 N.E.3d 86. "An appellate court will not retry a defendant when considering a challenge to the sufficiency of the evidence." *Id.* "The State is given the benefit of all reasonable inferences, and the evidence is considered in the light most favorable to the prosecution." *Id.* "The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses." *People v. Wheeler*, 226 Ill. 2d 92, 114-15, 871 N.E.2d 728, 740 (2007). "[A] conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115, 871 N.E.2d at 740.

¶ 29         Defendant was found guilty of two counts of predatory criminal sexual assault of

a child (720 ILCS 5/11-1.40(a)(1) (West 2012)). A person commits predatory criminal sexual assault of a child if:

"that person commits an act of sexual penetration, is 17 years of age or older, and:

(1) the victim is under 13 years of age[.]" *Id.*

"Sexual penetration" is defined, in relevant part, as follows:

"[A]ny contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person ***." 720 ILCS 5/11-0.1 (West 2012).

¶ 30     In this case, the State alleged that defendant committed acts of penetration by (1) placing his penis in the vagina of M.B. and (2) placing his finger within the vagina of M.B.

¶ 31     Shelly testified that M.B. told her that defendant put his fingers in her "special spot" and that he put his "private area" "on her private area." M.B. testified that defendant "licked his finger and put it in my private." However, M.B. testified that defendant did not touch "his privates" against M.B.'s "privates." On the recording of M.B.'s interview with Crady, M.B. stated that defendant licked his "private part" and put it in M.B.'s "private part" and that he "pushed it in kind of hard." Also on the recording, M.B. used a body chart to identify the female "private part" as the female vaginal area and the male "private part" as the male penis.

¶ 32     In *People v. Boling*, 2014 IL App (4th) 120634, ¶ 83, 8 N.E.3d 65, we wrote the following:

"The General Assembly enacted section 115-10 of the

Code to allow admission of 'detailed corroborative evidence of the child's complaint about the incident to another individual' out of a concern that 'child witnesses, especially the very young, often lack the cognitive or language skills to effectively communicate instances of abuse at trial [citation], or may be impeded psychologically in their efforts to do so.' " *Id.* (quoting *People v. Bowen*, 183 Ill. 2d 103, 115, 699 N.E.2d 577, 584 (1998)).

Considering those concerns, we conclude that the jury had the authority to determine how to weigh M.B.'s in-court testimony that defendant did not touch his penis on M.B.'s vagina against Shelly's testimony and M.B.'s recorded statement that he had. The jury determined that M.B.'s out-of-court statements were more credible. That conclusion is not so unreasonable, improbable, or unsatisfactory as to justify overturning defendant's conviction. We conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 33                    B. Hearsay Evidence Admitted Under Section 115-10

¶ 34                        1. *Statutory Language and the Standard of Review*

¶ 35            In a prosecution for a physical or sexual act committed against a child under the age of 13—including a prosecution for predatory criminal sexual assault of a child, as in this case—section 115-10 of the Code allows the following evidence to be admitted as an exception to the hearsay rule: (1) "testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another," and (2) "testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." 725 ILCS 5/115-10(a) (West 2014).

- 8 -

¶ 36        Section 115-10 allows the introduction of the above hearsay statements only if (1) "[t]he court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability"; (2) the child either (a) "testifies at the proceeding", or (b) "is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement"; and (3) "the out of court statement was made before the victim attained 13 years of age or within 3 months after the commission of the offense, whichever occurs later."  725 ILCS 5/115-10(b) (West 2014).

¶ 37        In determining whether statements offered under section 115-10 are sufficiently reliable, the trial court should consider the following list of nonexclusive factors:

> "(1) the spontaneity and consistent repetition of the statement; (2)
> the mental state of the child in giving the statement; (3) the use of
> terminology not expected in a child of comparable age; and (4) the
> lack of a motive to fabricate." *Bowen*, 183 Ill. 2d at 120, 699
> N.E.2d at 586.

¶ 38        "The State, as the proponent of the out-of-court statements sought to be admitted pursuant to section 115-10 of the Code, bears the burden of establishing that the statements were reliable and not the result of adult prompting or manipulation."  *People v. Sharp*, 391 Ill. App. 3d 947, 955, 909 N.E.2d 971, 978 (2009).  "A reviewing court will reverse a trial court's determination pursuant to section 115-10 of the Code only when the record demonstrates that the court abused its discretion."  *Id.*  " 'An abuse of discretion occurs when the [court's] ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view.' "  *Id.* (quoting *People v. Robertson*, 312 Ill. App. 3d 467, 469, 727 N.E.2d 404, 406 (2000)).

¶ 39        2. *Defendant's Argument That Section 115-10 Be "Narrowly Construed"*

¶ 40 Defendant, quoting *People v. Bridgewater*, 259 Ill. App. 3d 344, 349, 631 N.E.2d 779, 782 (1994), argues that the hearsay exception of section 115-10 of the Code should be "narrowly construed." We reject that contention.

¶ 41 In *Bridgewater*, this court considered whether a hearsay statement made by a child older than 13 describing abuse that occurred while the child was younger than 13 could be admitted under section 115-10. *Id.* at 348, 631 N.E.2d at 782. The *Bridgewater* court, citing *Idaho v. Wright*, 497 U.S. 805, 820-21 (1990), noted that the hearsay exception established by section 115-10 was not "firmly rooted," and therefore, evidence admitted under it needed to show "a particularized guarantee of trustworthiness." (Internal quotation marks omitted.) *Bridgewater*, 259 Ill. App. 3d at 348, 631 N.E.2d at 782. In addition, the court explained that the admission of any hearsay statement infringes on a defendant's sixth amendment right to confront witnesses against him. *Id.* (citing U.S. Const., amend. VI). In light of those two principles, the *Bridgewater* court held that section 115-10 should be "narrowly construed." *Id.* at 349, 631 N.E.2d at 782. The court then concluded that under a narrow construction, section 115-10 required that a hearsay statement made by a child victim must be made when that victim was younger than 13.

¶ 42 We reject the *Bridgewater* court's conclusion that section 115-10 should be narrowly construed. In reaching its conclusion, the *Bridgewater* court relied on *Wright*, which in turn relied on *Ohio v. Roberts*, 448 U.S. 56 (1980). Notably, *Roberts* was abrogated by *Crawford v. Washington*, 541 U.S. 36 (2004). The holding of *Crawford* does not support the *Bridgewater* court's contention that section 115-10 should be narrowly construed.

¶ 43 In *Roberts*, the Supreme Court held that the confrontation clause bars the admission of a hearsay statement unless both (1) the declarant of the statement is unavailable and (2)

the statement bears adequate "indicia of reliability." (Internal quotation marks omitted.) *Roberts*, 448 U.S. at 65-66. The Court held further that reliability can be inferred when the statement falls with a "firmly rooted" hearsay exception. *Id.* at 66. Evidence introduced under a hearsay exception that was not "firmly rooted" needed to exhibit reliability through "particularized guarantees of trustworthiness." *Id.*

¶ 44　　In *Crawford*, the Court dispensed with the "amorphous notions of 'reliability' " that governed the *Roberts* Court's confrontation clause analysis. *Crawford*, 541 U.S. at 61. Instead, the Court held that, regardless of a statement's reliability, the confrontation clause bars the admission of any out-of-court statement that is "testimonial," unless (1) the statement's declarant is unavailable and (2) the defendant was afforded a prior opportunity for cross-examination. *Id.* at 68.

¶ 45　　In light of the Court's decision in *Crawford*, we reject *Bridgewater*'s holding that section 115-10 must be narrowly construed, because that holding relied on the notions of reliability overruled by *Crawford*. We note that we explicitly rejected *Bridgewater*'s holding in *People v. Peck*, 285 Ill. App. 3d 14, 20, 674 N.E.2d 440, 445 (1996). To the extent that the holding of *Bridgewater* was ever valid, it was tethered to the now discredited holdings of *Wright* and *Roberts*. Now *Crawford* controls. We reject any notion that *Crawford* requires section 115-10 to be "narrowly construed."

¶ 46　　　　　　3. *Findings Required by Section 115-10*

¶ 47　　Defendant argues that the trial court failed to file a sufficiently detailed order when it granted the State's motion to admit hearsay statements under section 115-10. We explicitly reject this claim.

¶ 48　　Section 115-10 allows the introduction of a hearsay statement if, among other

things, the trial court "finds in a hearing" that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." 725 ILCS 5/115-10(b)(1) (West 2014). Defendant relies on *People v. Coleman*, 205 Ill. App. 3d 567, 563 N.E.2d 1010 (1990), and *People v. Carter*, 244 Ill. App. 3d 792, 614 N.E.2d 452 (1993), for the proposition that section 115-10 requires a trial court to make explicit, detailed findings supporting its conclusion that the time, content, and circumstances of the statement provide sufficient safeguards of reliability.

¶ 49                              a. *Coleman* and *Carter*

¶ 50            In *Coleman*, this court held that the " 'safeguards of reliability' " required by section 115-10 were necessary to comply with "the confrontation clause's required showing of particular guarantees of trustworthiness." *Coleman*, 205 Ill. App. 3d at 584, 563 N.E.2d at 1020 (quoting Ill. Rev. Stat. 1989, ch. 38, ¶ 115-10(b)(1)). We determined further that the Supreme Court's then recent holding in *Wright* had given "greater definition to the required hearing and the finding necessary to allow admission" of hearsay evidence under section 115-10. *Id.* As a result, it became "necessary to construe the general language of section 115-10(b)(1) to be in line with the more particular language of *Wright*." *Id.* at 584, 563 N.E.2d at 1020-21. Based on the language of *Wright*, we held that a trial court does not make specific enough findings when it merely recites the statutory language of section 115-10. *Id.* at 584, 563 N.E.2d at 1021.

¶ 51            In *Carter*, the First District Appellate Court cited *Coleman* for the proposition that *Wright* required trial courts to make more specific and explicit findings than those listed in section 115-10. *Carter,* 244 Ill. App. 3d at 800-01, 614 N.E.2d at 457-58. Specifically, the *Carter* court held that the trial court's findings should "reflect the reasoning of the trial judge as to the reliability of the corroborative testimony." *Id.* at 801, 614 N.E.2d at 458.

¶ 52            As stated earlier in this opinion, *Crawford* abrogated the holdings of *Wright* and

- 12 -

*Roberts* that the confrontation clause requires that hearsay statements exhibit indicia of reliability before they can be admissible. *Crawford*, 541 U.S. at 61. Both *Coleman* and *Carter* rely on the discredited holding of *Wright* in reaching the conclusion that the confrontation clause requires more specific findings than the statutory language of section 115-10 would suggest. As a result, we decline to follow the holdings of *Coleman* and *Carter*.

¶ 53                 b. Statutory Requirements of Section 115-10

¶ 54          Section 115-10 requires the trial court to "find[]" that "the time, content, and circumstances of the statement provide sufficient safeguards of reliability." 725 ILCS 5/115-10(b)(1) (West 2014). The statute does not require that those findings be made in writing, nor does it require those findings to contain the level of detail promoted by defendant. "Where a statutory enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Relf v. Shatayeva*, 2013 IL 114925, ¶ 29, 998 N.E.2d 18.

¶ 55          In this case, the trial court made the following explicit, written findings:

> "[B]ased on the interviewing techniques used by [The Children's Advocacy Center,] the time, content and circumstances of the statements made to Tara Crady provide sufficient safeguards of reliability.
>
>       Further[,] the time, content and circumstances of the statements made to Shelly provide sufficient safeguards of reliability."

The court's findings here complied with the requirements of the statute.

¶ 56          4. *The Trial Court's Decision To Admit Hearsay Evidence*

¶ 57          In this case, the trial court found that both the recording of M.B.'s interview and

Shelly's testimony about M.B.'s complaints were sufficiently reliable and therefore admissible under section 115-10. M.B.'s statements to Shelly were made spontaneously and were repeated to Crady. Nothing about M.B.'s mental state suggested that those statements were unreliable. M.B. used language, such as "special spot" and "my private," that would be expected of a child of her age. Defendant's contention that M.B. had a motive to fabricate because Shelly did not want to drive a longer distance to transport M.B. to and from visitations is not persuasive. Under these circumstances, the trial court did not abuse its discretion by finding that M.B.'s statements were sufficiently reliable.

¶ 58    C. Admission of the Recorded Interview as Substantive Evidence

¶ 59    Defendant argues that the trial court abused its discretion by admitting the video- and audio-recording of M.B.'s interview with Crady as substantive evidence because the State failed to establish a sufficient foundation that the recording was unaltered. Crady testified that she reviewed the video- and audio-recording of her interview of M.B. and it fairly and accurately recorded their conversation. It was then admitted without objection. Nonetheless, defendant argues that the State was required to lay a foundation as to (1) the copying procedure used to make the exhibit and (2) the chain of custody of the exhibit. We strongly disagree.

¶ 60    1. *Standard of Review*

¶ 61    The admission of a video recording is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Taylor*, 2011 IL 110067, ¶ 27, 956 N.E.2d 431. A court abuses its discretion when its decision is "fanciful, unreasonable or when no reasonable person would adopt the trial court's view." *Id.*

¶ 62    2. *Applicable Law*

¶ 63    A recording containing both audio and video is admissible if the State presents the

- 14 -

foundation necessary to admit both the video and audio. *People v. Smith*, 321 Ill. App. 3d 669, 674, 749 N.E.2d 986, 991 (2001). "[V]ideotapes are admissible on the same basis as photographs." *Taylor*, 2011 IL 110067, ¶ 27, 956 N.E.2d 431. "Photographs, like any evidence, may be admitted into evidence when authenticated and relevant either to illustrate or corroborate the testimony of a witness, or to act as probative or real evidence of what the photograph depicts." *People v. Smith*, 152 Ill. 2d 229, 263, 604 N.E.2d 858, 872 (1992). "[S]ufficient foundation for the admission of a videotape is laid when a witness with personal knowledge of the filmed object testifies that the film is an accurate portrayal of what it purports to show." *People v. Vaden*, 336 Ill. App. 3d 893, 899, 784 N.E.2d 410, 415 (2003).

¶ 64        Defendant argues that the foundational requirements for video evidence are heightened when the recording is admitted for "substantive" rather than "demonstrative" purposes. In support, he quotes *People v. Flores*, 406 Ill. App. 3d 566, 941 N.E.2d 375 (2010), for the proposition that "visual recordings, when treated substantively, are real evidence requiring a proper foundation, including evidence that the proposed exhibit is substantially unaltered." *Id.* at 572, 941 N.E.2d at 381. The Second District Appellate Court in *Flores* determined that a witness's testimony that the video in question is an accurate portrayal is insufficient foundation to admit the recording as substantive evidence. The court explained that "the risk of modification, manipulation, and fabrication of images is present even when a live witness is available to testify to the condition of the item." *Id.* at 575, 941 N.E.2d at 384. The *Flores* court held that to admit a video-recording as substantive evidence, the following must be shown:

> "[A]n adequate foundation must show that the original has been
> preserved without change, addition, or deletion and that, if a copy
> is introduced into evidence, there must be a cogent explanation of

- 15 -

any copying such that the court is satisfied that during the copying process there were no changes, additions, or deletions."

*Id.* at 577, 941 N.E.2d at 385.

We decline to follow *Flores*, finding it both distinguishable and unhelpful.

¶ 65　　　　First, *Flores* is distinguishable because the testimony in that case raised serious questions as to whether the video had been altered in some fashion, especially given that the person who filmed the incident in question admitted having erased the original tape. *Id*. at 569, 941 N.E.2d at 379. The record before us in this appeal is utterly devoid of any suggestion that the recording at issue was altered in any way.

¶ 66　　　　Second, *Flores* is unhelpful because the key authority the Second District cited in support was its earlier decision in *People v. Taylor*, 398 Ill. App. 3d 74, 922 N.E.2d 1235 (2010), which the Illinois Supreme Court subsequently reversed. See *Taylor*, 2011 IL 110067, ¶ 1, 956 N.E.2d 431. In so doing, the supreme court noted that "[t]he principal issue presented in this case is whether under the so-called 'silent witness' theory, a videotape recording was properly admitted at defendant's trial." *Id*. The supreme court explained that under that doctrine, "a witness need not testify to the accuracy of the image depicted in the photographic or videotape evidence if the accuracy of the process that produced the evidence is established with an adequate foundation." *Id*. ¶ 32. However, the case before us does not involve the "silent witness" doctrine because Crady testified that the video recording in question was a true and accurate copy of the interview she conducted with M.B. Clearly, Crady had personal knowledge of the conversation portrayed in the video, and her testimony that it fairly and accurately portrayed that conversation constituted the only evidence necessary as foundation for the admissibility of the video recording.

¶ 67 We also view the Second District's discussion in *Flores* regarding the distinction between demonstrative evidence on the one hand and substantive evidence on the other to be outmoded and unhelpful, given the supreme court's discussion in *Taylor* regarding this distinction. In reversing the Second District in *Taylor*, the Supreme Court of Illinois wrote the following: "Historically, photographic evidence was admitted as demonstrative evidence. [Citation.] Such evidence had no significance apart from the ability to illustrate something testified to by a witness. [Citation.] Most jurisdictions now allow photographs and videotapes to be introduced as substantive evidence so long as a proper foundation is laid." *Id*. As we quoted earlier, the supreme court in *Taylor* explicitly stated that "videotapes are admissible on the same basis as photographs." *Id*. ¶ 27. That means, as the Third District Appellate Court explained in *Vaden*, "Sufficient foundation for the admission of a videotape is laid when a witness with personal knowledge of the filmed object testifies that the film is an accurate portrayal of what it purports to show." *Vaden*, 336 Ill. App. 3d at 899, 784 N.E.2d at 415. Accordingly, once the foundation meeting these standards has been shown, the video recording in question is admissible substantively, and no further foundational evidence is required.

¶ 68                                            3. *This Case*

¶ 69 In this case, the State provided sufficient foundation through Crady's testimony that she had viewed the recording and it was a fair and accurate record of the conversation that occurred between Crady and M.B. This foundational testimony was all the State needed to present for the recording to be admissible.

¶ 70 Although not necessary to our resolution of this issue, we note that defendant made no objection when the recording was admitted at trial. Defendant has therefore forfeited his claim that the recording should not have been admitted into evidence. *People v. Woods*, 214

Ill. 2d 455, 470, 828 N.E.2d 247, 256-57 (2005) ("[A] defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review."). The forfeiture rule is "particularly appropriate" when a defendant claims that the State failed to lay a proper foundation. *Id.* at 470, 828 N.E.2d at 257. In that circumstance, "a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *Id.*

¶ 71        In this case, had defendant objected, he could have then raised any potential misgivings about the integrity of the recording. If defendant had raised any meritorious concerns with the recording's integrity—which he did not in this case—the trial court could have allowed the State to elicit additional foundational evidence to address those concerns.

¶ 72                          D. Ineffective Assistance of Counsel

¶ 73        Defendant argues that his trial counsel was ineffective for failing to object to (1) the court's insufficiently detailed order admitting evidence under section 115-10, (2) testimony that was not presented at the section 115-10 hearing, and (3) the admission of the recording as substantive evidence or to request a jury instruction prohibiting its use as substantive evidence. We address and reject these arguments in turn.

¶ 74                          1. *Ineffective-Assistance Standard*

¶ 75        Claims of ineffective assistance of counsel are judged pursuant to the standard established by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires a defendant to demonstrate that (1) defense counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment" and (2) "but for defense counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. To prove that counsel's

performance was deficient, a defendant must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy. *Id.* at 689.

¶ 76                                    2. *People v. Veach*

¶ 77         This court recently explained the three different categories of cases in which a defendant raises ineffective assistance of counsel on direct appeal. See *People v. Veach*, 2016 IL App (4th) 130888, ¶¶ 71-90. Those categories are the following: Category A cases, which are direct appeals raising ineffective assistance of counsel that the appellate court should decline to address; Category B cases, which are direct appeals raising ineffective assistance of counsel that the appellate court may address because they are clearly groundless; and Category C cases, which are direct appeals raising ineffective assistance of counsel that an appellate court may address because trial counsel's errors were so egregious.

¶ 78         This case falls within Category B, one of the rare occasions on which an appellate court can reject a defendant's claims of ineffective assistance without awaiting the defendant's filing of a postconviction petition and the creation of a more complete record at a later hearing upon that petition. We may take this action because the record now before us shows defendant's ineffective-assistance arguments to be clearly groundless.

¶ 79                                    3. *This Case*

¶ 80         We first address defendant's claims that counsel was ineffective for failing to object to (1) the lack of specific findings in the trial court's order admitting hearsay evidence under section 115-10 (725 ILCS 5/115-10 (West 2014)) and (2) the admission of the recording as substantive evidence or to request a jury instruction prohibiting its use as substantive evidence. As previously explained, the court's order was sufficiently detailed, and the recording was properly admitted as substantive evidence. Therefore, counsel clearly was not deficient for failing to ob-

ject to the court's valid actions or to request an inapplicable jury instruction.

¶ 81     Next, we address defendant's claim that counsel was ineffective for failing to object to testimony that was not presented at the section 115-10 hearing.  Specifically, defendant argues that counsel should have objected when Shelly testified that, after hearing M.B.'s allegations, she called her friend, whose husband was a police officer, and the officer told her to call the police.  Defendant argues that counsel should have objected to that testimony because it was not presented at the hearing on the State's motion *in limine* to allow Shelly's testimony about M.B.'s statement.  We conclude that counsel clearly did not err by failing to object, and defendant's contention otherwise is completely without merit.  The purpose of the motion *in limine* was to determine whether Shelly's hearsay testimony about M.B.'s complaints of sexual assault was admissible.  Testimony about Shelly's reaction to M.B.'s complaints was not the subject of the motion *in limine* and, therefore, the State did not need to offer that testimony at the section 115-10 hearing.  We further note that, although this testimony may have had minimal probative value, it had absolutely no prejudicial effect.

¶ 82                              E. Excessive Sentence

¶ 83     Last, defendant argues that the trial court imposed an excessive sentence.  Specifically, defendant argues that the trial court failed to consider the following mandatory mitigating factor when sentencing defendant: "The character and attitudes of the defendant indicate that he is unlikely to commit another crime."  730 ILCS 5/5-5-3.1(a)(9) (West 2012).  We disagree.

¶ 84     " 'A trial court is given great deference when making sentencing decisions, and if a sentence falls within the statutory guidelines, it will not be disturbed on review unless the court abused its discretion and the sentence is manifestly disproportionate to the nature of the case.' "
*People v. Stutzman*, 2015 IL App (4th) 130889, ¶ 44, 38 N.E.3d 544 (quoting *People v. Grace*,

365 Ill. App. 3d 508, 512, 849 N.E.2d 1090, 1093-94 (2006)). "Absent an abuse of discretion, a trial court's sentence will not be disturbed on appeal merely because this court might have weighed the mitigating and aggravating factors differently." *Id.*

¶ 85 Section 5-5-3.1(a)(9) dictates that the following ground "shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment": "The character and attitudes of the defendant indicate that he is unlikely to commit another crime." 730 ILCS 5/5-5-3.1(a)(9) (West 2012). We presume that the trial court considered the mitigating evidence before it, absent explicit evidence to the contrary. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶¶ 42-43, 2 N.E.3d 333. The court is not required to expressly indicate its consideration of all mitigating factors and the weight they should be assigned. *Id.* ¶ 43.

¶ 86 In fashioning its sentence in this case, the trial court stated that it found the following mitigating factor: that "there's no evidence that the defendant's criminal conduct caused *** serious physical harm to another." The court did not mention the presence of any other mitigating factors. The court then went on to name several factors in aggravation.

¶ 87 We presume that the trial court considered all mitigating factors and that the court did not find that defendant was "unlikely to commit another crime." 730 ILCS 5/5-5-3.1(a)(9) (West 2012). Defendant's lack of prior felony convictions does not require the court to find that defendant was unlikely to commit another crime. The court's determination about mitigating factors was not an abuse of discretion.

¶ 88 III. CONCLUSION

¶ 89 For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 90    Affirmed.

¶ 91    JUSTICE TURNER, specially concurring.

¶ 92    I concur in the result reached by the majority. I write separately to take exception to the majority's rejection of *Bridgewater*. First, despite defendant raising the assertion in support of his lack of trustworthiness and lack of specific findings arguments, the *Bridgewater* discussion is actually unnecessary to the court's decision in this case. Second, while *Crawford* dispensed with considering a statement's reliability in determining whether a statement is admissible under the confrontation clause (*supra* ¶ 44), *Crawford* did not alter *Wright*'s analysis that statutory hearsay exceptions such as section 115-10 are not firmly rooted hearsay exceptions. See *Wright*, 497 U.S. at 817. Such statements are presumptively barred by both the confrontation clause and the hearsay rule. *Wright*, 497 U.S. at 816. It is that general barring of such statements that warrants a narrow construction of section 115-10. Moreover, even if the crux of *Bridgewater*'s reasoning for requiring a narrow construction was the reliability determination overturned by *Crawford*, section 115-10 itself requires trial courts to find sufficient safeguards of reliability before the statements contemplated under that section are admissible.

¶ 93    Additionally, contrary to the majority's assertion (*supra* ¶ 45), our decision in *Peck* did not explicitly reject *Bridgewater*'s holding. We simply set forth the rules of statutory construction, as follows:

> "Although this court in *People v. Bridgewater*, 259 Ill.
> App. 3d 344, 349, 631 N.E.2d 779, 782 (1994), wrote that
> '[i]n light of the principles surrounding the admission of a
> statement as an exception to the hearsay rule, section 115-
> 10 of the Code should be narrowly construed,' a statute

should nonetheless be read as a whole and its language given its plain meaning [citation]. A court also must consider the reason and necessity for the law, as well as its objective. [Citation.] In addition, a court should give a statute capable of two interpretations the one that is reasonable and that will not produce absurd, unjust, unreasonable, or inconvenient results the legislature could not have intended. [Citation.]" *Peck*, 285 Ill. App. 3d at 20, 674 N.E.2d at 445.

¶ 94 Last, I note another reason for narrowly construing section 115-10 is that the provision allows for the admission of prior consistent statements. Generally, a witness cannot be corroborated on direct examination by the admission of a prior statement by the witness which is consistent with the witness's trial testimony. *People v. Ruback*, 2013 IL App (3d) 110256, ¶ 26, 988 N.E.2d 745. Absent section 115-10, such statements would constitute inadmissible hearsay and could not be used to bolster a witness's testimony. *Ruback*, 2013 IL App (3d) 110256, ¶ 26, 988 N.E.2d 745.

¶ 95 Hence, I see no reason to abandon *Bridgewater*'s holding the statute should be narrowly construed.