FIFTH DIVISION

December 28, 1998

No. 1-97-0726

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 93 CR 16707

)

MARY BRAGGS, ) Honorable

) 
Richard E. Neville
,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE HOURIHANE 
delivered the opinion of the

court:

On July 23, 1993, defendant Mary Braggs was indicted on two counts of first degree murder.  On June 20, 1996, after refusing to conduct a hearing on a pending motion to suppress statements, the circuit court found that defendant was unfit to stand trial and, in all probability, would remain so indefinitely in light of her untreatable mental retardation.  A discharge hearing followed.  Therein, the circuit court found that the evidence introduced against defendant was sufficient to establish her guilt of first degree murder beyond a reasonable doubt.  The circuit court then remanded defendant to the Department of Mental Health and Developmental Disabilities for a period of five years.

On appeal, defendant contends that (1) the circuit court erred in refusing to conduct a hearing on her motion to suppress statements and (2) the evidence introduced against her was not sufficient to establish her guilt of first degree murder beyond a reasonable doubt.

For the reasons that follow, we remand.

BACKGROUND

On June 23, 1994, almost one year after her indictment, defendant was examined by Dr. Roni Seltzberg, a psychiatrist charged with assessing her fitness to stand trial.  Based upon that examination, a fitness hearing was scheduled.

Prior to that hearing, defendant, through counsel, filed a motion to suppress all statements she made to various law enforcement officials, both at the time of her arrest and thereafter.  Within that motion, defendant alleged that she was interrogated following her arrest on June 23, 1993, during which time she made statements that were not voluntary.  According to defendant, although she was duly advised of her constitutional rights upon arrest, she was nevertheless unable to understand their full meaning because of her mental retardation.  Defendant also alleged that her statements were obtained through psychological and mental coercion.

Shortly thereafter, the circuit court conducted a fitness hearing.  At that hearing, Dr. Seltzberg testified that defendant, although aware of the nature of the charges against her, had a very limited understanding of the roles of the pertinent courtroom personnel and an equally poor understanding of the nature of the proceedings against her.  Dr. Seltzberg concluded that, based upon her examination, defendant was not fit to stand trial, but may attain such fitness within one year, depending upon the seriousness of her mental retardation.

Counsel for defendant offered no evidence to the contrary.

The circuit court, after considering the evidence before it, accepted the testimony of Dr. Seltzberg and found defendant unfit to stand trial.  In light thereof, the circuit court refused to consider the pending motion to suppress.  Counsel for defendant objected, arguing that pursuant to section 104-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11 (West 1994)), the circuit court could hear such a motion in that the presence of defendant was not essential to a fair determination of the issues therein.  The circuit court, disagreed, reasoning that defendant could not be unfit for some purposes, yet fit for others.

On May 16, 1996, almost two years later, defendant was examined by Dr. Philip Pan, another psychiatrist.

A hearing regarding the continuing unfitness of defendant was conducted shortly thereafter.

At that hearing, Dr. Pan testified that defendant remained unfit to stand trial in light of her continuing inability to understand the roles of the various courtroom personnel or the nature of the proceedings against her.  Dr. Pan also testified that, based upon his examination, defendant would never be restored to the fitness necessary to stand trial because of the untreatable nature of her mental retardation.

No other fitness evidence was presented.

The circuit court then found, based upon the testimony of Dr. Pan, that defendant was still unfit to stand trial, and that she would remain so indefinitely.

A discharge hearing followed. 

Therein, the State called Chicago police detective Allen Szudarski.  He testified that he discovered the bodies of Connie Hall and Donald Rudolph on April 28, 1993, inside a ransacked first-floor apartment located at 4135 South Prairie Avenue in Chicago.  Hall was lying in a bedroom partially covered by a blanket.  She had been stabbed multiple times in her back and side.  Rudolph was lying in a hallway nearby.   He had an injury to his chest.  Both Hall and Rudolph were covered with blood.

Chicago police detective E. Winstead, as stipulated by the parties, testified that he interviewed defendant on May 9, 1993, and was told that Rudolph let Ron Thomas and another, taller black man into his apartment.  Defendant was also present in the apartment at that time.  Detective Winstead was further told that the taller man began to choke Rudolph, at which time defendant hid herself in a closet.

Detectives from the Chicago police department subsequently located Thomas, who, at the time he was found, was in the company of another, taller black man, Michael Wilburn.  Both Thomas and Wilburn were alcoholics, and both denied any wrongdoing.

Defendant was then requestioned by detective Winstead.  Detective Winstead stated that defendant then changed her story, claiming that she had previously been mistaken.  Hall and Rudolph, defendant now explained, were not murdered by Thomas or anyone that she knew, but rather by two unknown black men who followed her home from the store.

Next, Chicago police detective James Cassidy testified that he interviewed defendant on June 25, 1993, after duly advising her of her constitutional rights.  Defendant told him that she and Hall were in the apartment together when Rudolph returned.  Rudolph was drunk and became violent, striking both her and Hall.  Defendant explained that she then knocked Rudolph to the floor of the living room where he struck his head.  Hall, in turn, became upset and accused her of killing Rudolph.  According to detective Cassidy, defendant further stated that Hall was stabbed a number of times in her upper body, and that she held Hall in her arms.  Thereafter, defendant returned to the bedroom where she slept until the following morning.  Upon waking, she gathered her clothes, which included a pair of white pants she had been wearing the prior evening, and left.  Defendant further told detective Cassidy that she later discarded those pants because they no longer fit, not because they were blood-stained.

Also introduced into evidence was a stipulation that Hall died from numerous stab wounds, and that Rudolph died as a result of strangulation.

In her defense, defendant introduced a stipulation that, if called, detective Winstead would testify that he interviewed Arthur Collins, who, in addition to being Hall's uncle was also the last border his niece and Rudolph allowed in their apartment.  Collins told detective Winstead that he moved earlier in April 1993 because there was too much activity and too many strangers in the apartment.

The circuit court, after considering the arguments of counsel, found the evidence introduced against defendant sufficient to establish her guilt of first degree murder beyond a reasonable doubt.  The circuit court then remanded defendant to the Department of Mental Health and Developmental Disabilities for a period of five years.

Defendant appealed.  

DISCUSSION

I.

Defendant initially contends that the circuit court erred in refusing to conduct a hearing on her motion to suppress statements.  According to her, the provisions of section 104-11 of the Code of Criminal Procedure clearly envision a circuit court conducting such a hearing, notwithstanding a prior finding of unfitness.

Section 104-11 of the Code provides, in pertinent part, as follows:

"Following a finding of unfitness, 
the court may hear and rule on any pretrial motion or motions if the defendant's presence is not essential to a fair determination of the issues
.  A motion may be reheard upon a showing that evidence is available which was not available, due to the defendant's unfitness, when the motion was first decided.  (Emphasis added.)  725 ILCS 5/104-11(d)(West 1996).

The foregoing provisions address themselves to 
all pretrial motions generally, which, by definition, includes motions to suppress.  725 ILCS 5/114-11 (West 1996).  Accordingly, the circuit court erred in refusing to conduct a hearing on defendant's motion to suppress unless it can be said that the presence of defendant was essential to a fair determination of the issues raised therein.

Here, however, counsel for defendant specifically advised the circuit court, prior to the discharge hearing, that the presence of defendant was not necessary for a fair determination of the issues presented within her motion to suppress.  Counsel for defendant also informed the circuit court that Dr. Linda Wetzel, a privately-retained psychologist, had examined defendant and would testify that the latter could not understand the constitutional rights of which she was admittedly advised due to the severity of her mental retardation.  The circuit court was further informed that counsel for defendant would introduce evidence he believed would establish mental and psychological coercion in connection with the statements given by his client.

The circuit court declined to conduct a hearing on that motion, reasoning that, as a matter of law, a finding of unfitness to stand trial necessarily precludes any hearing on a motion to suppress.

A finding of unfitness to stand trial does not necessarily preclude a hearing on a motion to suppress.  See 
People v. Lavold
, 262 Ill. App. 3d 984, 1003-004, 635 N.E.2d 919 (1994)(McNulty, J., dissenting); 
People v. Fuhrman
, 233 Ill. App. 3d 503, 507, 599 N.E.2d 478 (1992); 
 
People v. Burt
, 142 Ill. App. 3d 833, 837, 492 N.E.2d 233 (1986).  Indeed, the provisions of section 104-11(d) of the Code expressly and explicitly allow for such a hearing, notwithstanding a prior finding of unfitness, where the presence of the defendant is not essential to a fair determination of the issues raised therein.  725 ILCS 5/104-

11(d)(West 1996).  As the aforementioned offer of proof established, the presence of defendant was not essential to a fair determination of the issues raised within her motion to suppress.  The circuit court therefore erred in refusing to conduct a hearing on that motion.

II.

Defendant next contends that the evidence introduced against her was insufficient to establish her guilt of first degree murder beyond a reasonable doubt.

To the contrary, however, the evidence introduced against defendant, when viewed in its aspect most favorable to the State, was sufficient to establish her guilt beyond a reasonable doubt.  

CONCLUSION

For the aforementioned reasons, we remand this matter for a hearing on the motion to suppress statements.  In the event that motion is granted and the statements of defendant are suppressed, the circuit court shall conduct a new discharge hearing at its earliest possible convenience.

Remanded with directions.

HARTMAN and THEIS, JJ., concur.