**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200425-U

Order filed March 8, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* D.B., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| a Minor | ) | Henry County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-20-0425 |
| | ) | Circuit No. 20-JD-2 |
| v. | ) | |
| | ) | |
| D.B., | ) | Honorable |
| | ) | Terence M. Patton, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice McDade concurred in the judgment
Justice Schmidt dissented, with opinion.

_____

**ORDER**

¶ 1        *Held*:   The circuit court erred in refusing to consider respondent's motion to suppress his confession, which was raised during his discharge hearing, on the basis that it was untimely.

¶ 2        Following a discharge hearing, respondent, D.B., was found not not guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Respondent argues that

the Henry County circuit court erred in refusing to consider his motion to suppress his confession, which was made during his discharge hearing. Respondent alternatively argues that his counsel was ineffective for failing to file a motion to suppress prior to the discharge hearing. We reverse and remand with directions.

¶ 3                                  I. BACKGROUND

¶ 4        The State filed a petition for adjudication of wardship against respondent pursuant to section 5-520 of the Juvenile Court Act of 1987 (705 ILCS 405/5-520 (West 2018)). In the petition, the State alleged that respondent committed the offense of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2018)) in that he placed his penis in the anus of a minor victim. The petition also alleged that respondent committed the offense of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)) in that he placed his penis on the same victim. Respondent was 17 years old and the victim was 3 years old at the time of the alleged offenses.

¶ 5        Defense counsel filed a motion for a fitness evaluation alleging that she had a *bona fide* doubt as to respondent's fitness. The court ordered a fitness evaluation.

¶ 6        A fitness evaluation report was prepared by Dr. Joel Eckert. The report was dated March 19, 2020, and it was filed on May 27, 2020. Eckert found that respondent had a mild developmental disability. His full-scale intelligence quotient (IQ) was 65. Eckert found that respondent's reading comprehension and receptive language skills were poorly developed. Testing designed to show the level of verbal complexity respondent could understand revealed that respondent had a receptive language age equivalent of 8 years and 11 months. Testing designed to show respondent's ability to read and comprehend paragraph-length material showed that respondent had a receptive language age equivalent of 9 years and 6 months. The report also discussed respondent's family history. The report did not give an opinion as to fitness.

2

¶ 7    The court ordered Eckert to render an opinion as to fitness. An addendum to the psychological evaluation report was filed on June 6, 2020. In the addendum, Eckert opined that respondent was unfit to stand trial and would not be restored to fitness within one year. Eckert stated that respondent was incapable of providing meaningful assistance to his attorney. Respondent's identification, problem solving, and general abstract reasoning skills were extremely limited.

¶ 8    The court found that respondent was unfit to stand trial and that there was a reasonable probability that he would not be restored to fitness within one year.

¶ 9    A discharge hearing was held on August 21, 2020. Dennis M., the brother of the victim, testified that he and respondent were playing video games in his bedroom. The victim was also present. Dennis left the room to use the bathroom and talk to his parents. When he returned, respondent had the victim on her stomach with her pants pulled down. Respondent was on top of her. Dennis did not see respondent's penis, but he saw respondent pull his pants up. Dennis told respondent to get off the victim. Dennis drove respondent home. Respondent cried and told Dennis that he was sorry for what he did. Respondent and Dennis never discussed exactly what respondent did.

¶ 10    Detective Joe Bedford testified that he and Sergeant Josh Verscheure interviewed respondent. Respondent's mother was present during the interview. Bedford testified that respondent appeared to have a developmental disability. Respondent's mother told Bedford that respondent functioned as a 13 year old or 15 year old. Bedford could tell when people with cognitive disabilities did not understand a question. When that happened, he would rephrase the question using simpler terms. Bedford had to use simpler terms with respondent several times. Bedford could not tell when someone was only pretending to understand something. Bedford

3

read respondent the juvenile *Miranda* waiver. Respondent and his mother indicated that they understood the *Miranda* waiver, and respondent's mother signed a written waiver form.

¶ 11 The State asked Bedford what occurred during the interview, and defense counsel objected. Counsel stated that respondent did not understand his *Miranda* warnings, and his answers to Bedford's questions should be inadmissible. Counsel stated that she had an expert witness, Eckert, who could testify as a proffer that respondent did not understand his *Miranda* warnings. The court asked if counsel had filed a motion to suppress prior to the discharge hearing, and counsel said she had not. Counsel said that this was recent information and that she could raise the issue at any time. Counsel explained that she spoke with Eckert earlier that week in preparation for the discharge hearing, and Eckert said that he did not believe that respondent had the capacity to knowingly waive his *Miranda* rights. The State argued that the suppression issue should have been raised prior to the discharge hearing because defense counsel should have known the basis for the suppression motion earlier based on Eckert's reports.

¶ 12 The court overruled the objection. The court disagreed that a suppression motion could be raised at any time. The court stated: "I believe it has to be raised before trial unless there is some reason shown why it could not have been raised before trial." The court found that defense counsel had not shown a reason why she could not have raised the issue prior to the discharge hearing. The court reasoned that respondent's mental health issues were "not new" and that Eckert's evaluation "should have put the parties on notice that there may have been concerns or arguably or allegedly concerns about the voluntariness of the statement." Bedford proceeded to testify about respondent's statements during the interview.

¶ 13 The State moved to admit and publish a video and audio recording of respondent's interview. Defense counsel objected. Counsel asserted that the case *People v. Flatt*, 82 Ill. 2d 250

4

(1980), stood for the proposition that a motion to suppress could be made during a trial. The court called a recess so that it could review *Flatt*.

¶ 14    When the proceedings resumed, the court overruled counsel's objection to the admission of the recording. The court stated that the motion to suppress was governed by section 114-11(g) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-11(g) (West 2018)), which stated that the motion shall be made before trial unless the opportunity did not exist or the defendant was not aware of the grounds for the motion. The court reasoned:

> "In this case, I found earlier and I continue to find and believe that the opportunity to file a motion to suppress before trial did exist and that the defense was aware or should have been aware of the grounds. [Respondent's] developmental disabilities. It's something that's probably been discussed for quite some time now. The doctor's report has been received for quite some time now. I can only assume a copy of the video was produced in discovery. ***
>
> So I continue to find that a motion to suppress now in the middle of trial is not timely and I won't consider a motion to suppress ***."

¶ 15    The State published the recording of respondent's interview. In the recording, Bedford read respondent his juvenile *Miranda* rights. Bedford stopped several times and asked respondent if he understood. Each time, respondent replied, "Yes." Bedford asked respondent if he wanted a lawyer "right now." Respondent shook his head. Respondent's mother said, "Your dad's gonna get you one." She then looked at the officers and said, "But he's not here." Verscheure said that respondent could ask for a lawyer at any time, and they would stop the interview. Respondent's mother asked, "That doesn't mean he can walk out of here, right?" Verscheure replied, "No, it just means that he doesn't want to talk anymore." Bedford then asked

5

respondent if he wanted to talk to him without a lawyer. Respondent nodded his head. Bedford asked respondent if he could read and write in English. Respondent said, "Yeah." Bedford asked respondent if he had a hard time writing. Respondent said nothing. Bedford asked respondent if he could write "really well." Respondent said, "I think so." Bedford then asked respondent's mother to sign the *Miranda* form.

¶ 16        Bedford asked respondent if he knew why he was there. Respondent said that he was there because of "what [he] did to the little girl." Respondent said that he was at Dennis's house in Dennis's bedroom at the time of the incident. Dennis went downstairs. A few seconds after Dennis left the room, respondent said that he pulled the victim's pants down and placed his "dick" in the victim's "butt." The victim was on her belly on the floor, and respondent was on top of her.

¶ 17        Bedford asked respondent if he watched pornography on the internet. Respondent said he watched pornography on his cell phone. Respondent said he did not search for child pornography. Bedford asked respondent what he would say to the victim and her family if he could tell them something. Respondent said he was sorry for what he did, he knew it was wrong, and he would take it back if he could.

¶ 18        Physician's Assistant Jordan Henry testified that he examined the victim in the emergency room on the day of the incident. Henry testified that there was redness in the victim's vaginal region and a small laceration at the rim of the vaginal opening between the vaginal tissue and perineal tissue. The victim's hymen was widened, which was unusual for a patient the victim's age. There was no trauma to the anus. Henry testified that these observations were "consistent with penetration."

¶ 19    Dr. Eckert testified that he was a licensed clinical psychologist, and the court qualified him as an expert in the field of clinical psychology. After conducting a psychological evaluation of respondent, Eckert determined that respondent had a full-scale IQ of 65. This put respondent in the first percentile in relation to a normative group of random peers. Eckert explained, "In other words, if you chose 100 random peers with 100 being the smartest and 1 being the least cognitively capable, he would be number 1."

¶ 20    Eckert testified that respondent knew that what he was accused of doing was wrong because he would be severely punished for it. However, respondent's "understanding of what he did with regard to right and wrong would be very primitive in our eyes, very childlike." Eckert testified that respondent's "ability to understand the criminality of his acts in more than a very, very basic way is extremely limited."

¶ 21    Eckert testified that developmentally disabled individuals often say that they understand things they do not understand. They do not want to be viewed as "stupid" or "dumb" because "they paid the price before for asking for clarification." Eckert opined that respondent's ability to provide sophisticated information in an interview or interrogation would be limited. Developmentally disabled people tended to tell an interviewer what they thought the interviewer wanted to hear. Eckert believed that respondent repeated things without understanding them. One would not necessarily know whether respondent understood something he was repeating.

¶ 22    Eckert testified that he did not believe that someone with a developmental disability at respondent's level "would have a clue as to what the disastrous potential ramifications would be of waiving his *Miranda* rights. He wouldn't even understand what *Miranda* rights are." Eckert believed that respondent understood that his attorney was trying to help him, but he did not understand the duties of an attorney. Eckert noted that respondent had the receptive language

skills of a child who was 8 years and 11 months old and would have a similar understanding of a child that age of things that were being spoken to him, like *Miranda* rights.

¶ 23    Eckert testified that he had not watched the recording of respondent's interview with the police, as he had not been asked to do so.

¶ 24    The parties gave closing arguments. Defense counsel argued that respondent was not guilty by reason of insanity.

¶ 25    The circuit court found respondent not not guilty of the charged offenses.[1] The court discussed Dennis's and Henry's testimony. The court noted that during respondent's interview with Bedford, respondent said several times that he put his penis in the victim's "butt." The court reasoned that respondent's penis likely did not actually enter the victim's anus, as Henry did not observe any trauma to the anus. However, the court found that respondent's actions still met the statutory definition of penetration. The court stated no one could know with certainty how much of the interview that respondent understood. However, the court noted that respondent's answers to Bedford's questions made sense and were responsive to the questions that had been asked, which indicated that respondent understood the questions. The court noted that respondent said that he looked at pornography, which indicated that he understood what a sexual act was.

¶ 26    The court found that respondent had not established by clear and convincing evidence that he was not guilty by reason of insanity.

¶ 27    Defense counsel filed a motion to vacate the verdict and for a new hearing. The motion argued that the circuit court erred in admitting respondent's statements to the police because he was unable to understand the nature of the *Miranda* warnings due to his cognitive limitations.

---

[1]The court stated during its ruling that it had found respondent guilty but mentally ill. However, this was not a proper finding for a discharge hearing. See 725 ILCS 5/104-25 (West 2018). The court clarified at a subsequent hearing that it had found respondent not not guilty.

Counsel also alleged that she was unable to file a motion to suppress respondent's statements due to the finding of unfitness.

¶ 28    The court denied the motion. The court found that counsel was not prevented from filing a motion to suppress due to the finding of unfitness. The court further found that the motion could have and should have been presented prior to the discharge hearing because the finding of fitness was made approximately two months prior to the discharge hearing. The court further stated: "[E]ven if a motion to suppress had been filed, I don't believe that that would have been granted anyway. So I don't find any prejudice." The court acknowledged that defense counsel may not have been able to ask Eckert "her full line of questioning" at the discharge hearing but noted that Eckert rendered opinions on respondent's understanding of his *Miranda* warnings. The court stated that it formed its own opinion based on Eckert's testimony and the recording of the interview. The court found that respondent appeared to understand all the questions, and his answers were responsive to the questions that were asked. The court also noted that the officers used a conversational tone of voice, and respondent's mother was present.

¶ 29    II. ANALYSIS

¶ 30    Respondent argues that the circuit court erred in not affording defense counsel an opportunity to argue for the suppression of his confession pursuant to section 114-11(g) of the Code (725 ILCS 5/114-11(g) (West 2018)) during the discharge hearing. The State contends that the court properly declined to consider the motion because it was untimely under section 114-11(g). We find that respondent's suppression motion was not untimely under section 114-11(g), and the court erred in refusing to consider it.

¶ 31    Initially, the parties disagree as to the standard of review. Respondent asserts that the question of whether his incriminating statement was voluntary is subject to *de novo* review. See

9

*People v. Moore*, 368 Ill. App. 3d 549, 553 (2006). The State asserts that the abuse of discretion standard applies to the issue of whether the circuit court erred in declining to grant respondent a hearing on his motion to suppress. Because the issue before us concerns the circuit court's refusal to consider the motion to suppress on the basis that it was untimely rather than a substantive ruling on the voluntariness of respondent's statements, we agree with the State that the abuse of discretion standard applies. See *People v. Prince*, 362 Ill. App. 3d 762, 775 (2005).

¶ 32        We turn to respondent's substantive argument that the circuit court erred in refusing to afford defense counsel an opportunity to argue for suppression of respondent's confession under section 114-11(g) of the Code (725 ILCS 5/114-11(g) (West 2018)). Section 114-11(a) of the Code (*id.* § 114-11(a)) provides that "[p]rior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary." Section 114-11(g) provides that such a motion "shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." *Id.* § 114-11(g).

¶ 33        A discharge hearing under section 104-25 of the Code (*id.* § 104-25) is not a criminal trial. *People v. Waid*, 221 Ill. 2d 464, 470 (2006). Rather, it is civil in nature. *Id.* The purpose of a discharge hearing is to determine the sufficiency of the evidence against an individual who has been accused of a crime but has been found unfit to stand trial. 725 ILCS 5/104-25(a) (West 2018). If the accused is not acquitted, he or she is remanded to the custody of the Department of Human Services for treatment for a specified period of time. *Id.* § 104-25(d). If, at the end of the treatment period, the circuit court finds that the accused has become fit or can be rendered fit, the court may proceed with trial. *Id.* § 104-25(g)(1). If the accused remains unfit, the court may conduct proceedings to determine if the accused is subject to involuntary civil commitment. *Id.*

§ 104-25(g)(2). The provision for discharge hearings in section 104-25 of the Code also applies to proceedings brought under the Juvenile Court Act of 1987 (705 ILCS 405/1 *et seq.* (West 2018)), as in the instant case. *In re S.B.*, 2012 IL 112204, ¶ 21.

¶ 34        Although not cited by the parties either in the circuit court or on appeal, this court has directly addressed the applicability of section 114-11(g) of the Code (725 ILCS 5/114-11 (West 2018)) to discharge hearings in its decision in *People v. Fuhrman*, 233 Ill. App. 3d 503 (1992). The *Fuhrman* court held that the defendant's motion to suppress, which was made during a discharge hearing, was timely under section 114-11(g) of the Code because a discharge hearing is held before the commencement of a criminal trial. *Id.* at 506. The court reasoned:

> "Section 114-11 clearly requires that a motion to suppress must be made *prior to a trial.* As the State points out in its brief, there are similarities between a trial and a discharge hearing. However, we note that, depending upon the result of the discharge hearing, [the defendant] may later be subjected to a trial for whatever crime he was charged with. [Citation.] We therefore interpret section 114-11 to mean that a discharge hearing is *not* the same procedure as a trial. [Citation.] Accordingly, [the defendant's] motion to suppress was made prior to trial as required by the statute." (Emphasis in original.) *Id.* at 506-07.

¶ 35        The *Fuhrman* court went on to hold that, under the circumstances of the case, the circuit court erred in refusing to allow a suppression hearing. *Id.* at 507. The *Fuhrman* court noted that the State did not object to holding a suppression hearing. *Id.* The court found that holding a suppression hearing would not have caused prejudice or inconvenience to the State because the witnesses that were needed to testify were present at the discharge hearing. *Id.* The *Fuhrman*

11

court further found that not holding a suppression hearing caused great prejudice to the defendant. *Id.*

¶ 36 In the instant case, as in *Fuhrman*, the circuit court erred in refusing to consider respondent's motion to suppress on the basis that it was untimely under section 114-11(g) of the Code. Respondent's motion to suppress was not untimely under section 114-11(g) because it was made during a discharge hearing, which is a proceeding that occurs prior to a criminal trial. See *id.* at 506. Significantly, the circuit court's finding that the motion was untimely under section 114-11(g) was its sole basis for declining to consider the motion. We note that the court repeatedly and erroneously referred to the proceeding as a "trial" rather than a "discharge hearing" in declining to consider the motion to suppress.

¶ 37 We acknowledge that, unlike in *Fuhrman*, the State objected to the suppression motion on the basis of timeliness. However, the prejudice and inconvenience the State would have suffered by holding a suppression hearing would have been minimal, as Dr. Eckert was present to testify at the discharge hearing. Meanwhile, respondent was prejudiced by the court' s refusal to consider whether he validly waived his *Miranda* rights before confessing to the offense.

¶ 38 We reject the State's argument that, even if the court erred in admitting respondent's confession into evidence, the admission of the confession was harmless beyond a reasonable doubt. "In determining whether a constitutional error is harmless, the test to be applied is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained." *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). Our supreme court has identified three approaches for measuring error under this test: "(1) focusing on the error to determine whether it might have contributed to the conviction, (2) examining the other evidence in the case to see if overwhelming evidence supports the conviction, and (3) determining whether

12

the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Id.*

¶ 39 In the instant case, it is clear that the circuit court's consideration of the confession contributed to its finding of not not guilty. The court referred to the confession several times in delivering its ruling. The remaining evidence in the case was not overwhelming. Dennis testified that he saw the victim lying on her stomach with her pants pulled down with respondent on top of her. Dennis then saw respondent pull up his pants. Dennis did not see exactly what happened, and he and respondent did not discuss what exactly respondent had done. A medical examination of the victim revealed findings consistent with penetration, including redness in the vaginal area, a small tear on the vagina, and a widened hymen. However, respondent's confession was the most detailed account of the incident. The confession was not duplicative of the other evidence admitted, as no other evidence directly showed that respondent's penis made contact with the victim's anus. Under these circumstances, we do not find that the potentially erroneous admission of the confession was harmless beyond a reasonable doubt.

¶ 40 Both parties make extensive arguments on appeal concerning the voluntariness of respondent's confession. We make no finding as to whether the confession was voluntary or as to whether respondent validly waived his *Miranda* rights, as this issue was never ruled upon in the circuit court. We acknowledge that the circuit court indicated at the hearing on respondent's motion to vacate the verdict that it would have likely denied a motion to suppress if one had been filed. However, the court also acknowledged that defense counsel may not have been able to question Dr. Eckert on the issue to the extent that she wanted to.

¶ 41 We find that the appropriate remedy in this case is to remand the matter for a suppression hearing. See *Fuhrman*, 233 Ill. App. 3d at 507. This will afford the circuit court the opportunity

13

to definitively rule on the motion to suppress after respondent has fully presented the evidence in support of the motion. If the court grants the motion to suppress, a new discharge hearing should be held. See *People v. Braggs*, 302 Ill. App. 3d 602, 606-07 (1998). In light of our holding, we need not address respondent's alternative argument that he received ineffective assistance of counsel.

¶ 42                                    III. CONCLUSION

¶ 43       The judgment of the circuit court of Henry County is reversed. The matter is remanded to the circuit court for a hearing on respondent's motion to suppress. If, following the hearing, the circuit court denies the motion, it shall reinstate its finding of not not guilty. If the circuit court grants the motion, it shall vacate its finding of not not guilty and hold a new discharge hearing. See *People v. King*, 61 Ill. 2d 326, 330 (1975); *Braggs*, 302 Ill. App. 3d at 606-07.

¶ 44       Reversed and remanded with directions.

¶ 45       JUSTICE SCHMIDT, dissenting:

¶ 46       The majority reverses and remands the cause for a hearing on the motion to suppress respondent's confession. The evidence is overwhelming. Any error in denying the motion to suppress evidence is harmless beyond a reasonable doubt. See *People v. Patterson*, 217 Ill. 2d 407, 428 (2005).

¶ 47       Here, a witness observed the incident. Dennis saw the victim lying on her stomach with her pants down. He saw respondent on top of her. He did not see respondent's penis, but he saw respondent pull up his pants. Despite seeing respondent on top of the victim with their pants down, Dennis did not see what respondent did to the victim. However, the medical examination confirmed the obvious: it revealed findings consistent with penetration. Respondent's confession only served to confirm what Dennis observed and the medical examination revealed. The result of

14

the proceeding would not have changed had respondent's confession been suppressed. See *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990) (evidentiary error is harmless "where there is no reasonable probability that the [trier of fact] would have acquitted the [respondent] absent the" error).

¶ 48        We should affirm.